**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Melvin LEMMONS,
Defendant-Appellant.**

**No. 74–1874.**

United States Court of Appeals,
Sixth Circuit.

Argued April 14, 1975.

Decided Dec. 24, 1975.

As Amended Jan. 14, 1976.
Rehearing and Rehearing En Banc
Denied Feb. 13, 1976.

Wilfred C. Rice, Detroit, Mich., for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Richard L. Delonis, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before WEICK and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

This is an appeal from conviction in a nonjury trial under a one-count indictment charging appellant with unlawful possession and intent to distribute 118.5 grams of heroin. 21 U.S.C. § 841(a)(1).[1] We affirm.

The relevant facts are as follows. On January 16, 1973, Special Agent DePot-

tey obtained a warrant for the search of a store building occupied by a retail clothing business known as "Imported Fashions of Tomorrow" located at 9300 Woodward Avenue, Detroit, Michigan. Agent DePottey returned to his office with the warrant and placed it in a file. The next day DePottey was placed on extended limited duty status for medical reasons and was restricted to office activities. Sgt. Teshka of the Michigan State Police executed the warrant at about 3 p. m. on January 22, 1973, five days after the warrant was issued.

The search warrant authorized a search of the first floor and basement area of the store that was "designated by the number 9300 above the doorway." Before the search commenced, Sergeant Teshka showed a copy of the search warrant to Alice Jones who identified herself to him as the person in charge of the store.

Shortly after the search was started, one of the officers discovered 16 packets of heroin in a file cabinet in an office area located at the rear of the store. Miss Jones was shown the packets and was shown where they were found. Within a few minutes, Mr. Lemmons arrived at the store. He identified himself as one of the owners of the business and told one of the officers that he felt he "had a right to see some papers that gave [the officers] permission to be on the premises." After the store had been thoroughly searched, both Miss Jones and Mr. Lemmons were placed under arrest and Lemmons' fingerprints were taken.

A one-count indictment was returned on April 4 charging appellant and Miss Jones with violation of 21 U.S.C. § 841(a)(1). On October 30, the district court conducted an evidentiary hearing on motions for a bill of particulars, for disclosure of the identity of an informant, and for suppression of evidence.

---

1. 21 U.S.C. § 841(a)(1) provides:

(a) Except as authorized by this subchapter, it 'shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
. . . .

On January 24, 1974, the district court denied the motions.

A trial to the court without a jury commenced on February 26, 1974. At trial, Sgt. Mowery, a latent print specialist employed by the Michigan State Police, testified that fingerprints found on 2 of the 16 foil packets were attributable to Lemmons. The initial fingerprint analysis had been performed by Sgt. Nichols at the Michigan State Police Laboratory, but he died before trial. Accordingly, Sgt. Mowery, who had verified Nichols' findings at the laboratory, gave the testimony inculpating Lemmons. On the basis of Sgt. Mowery's testimony that appellant's prints were found on the foil packets, the district judge found Lemmons guilty of the offense charged.

On appeal we identify three issues that require discussion: (1) whether the five day delay in the execution of the warrant invalidated the search and required suppression of the foil packets containing the heroin; (2) whether probable cause existed for Lemmons' arrest, at which time his fingerprints were obtained; and (3) whether Sgt. Mowery's testimony about the fingerprint identification was admissible.

In *United States v. Wilson*, 491 F.2d 724 (6th Cir. 1974), we considered whether a six day delay in the execution of a search warrant required suppression of the evidence obtained. After reviewing the cases, we said that the better reasoned rule "allowed some delay where the cause or causes of the delay could appropriately be held to be 'reasonable.'" 491 F.2d at 725. In *Wilson* we determined that since the informant had purchased drugs on the day the warrant was issued and the Government wanted to conceal the identity of the informant, the delay in executing the warrant was reasonable. Although we do not condone a delay of the magnitude that occurred here, we determine that since the delay was caused by the ill health of DePottey, the agent-in-charge, it was reasonable. We also find that

probable cause still existed for the search on January 22, 1973, because the warrant was executed within ten days as required by Fed.R.Crim.P. 41(c), and because there is nothing in the record to indicate that the circumstances related in the agent's affidavit affording probable cause for the issuance of the search warrant had changed before it was executed.

In determining that the officers had probable cause to arrest Lemmons, the district court relied upon the following circumstances:

[T]he search warrant (which was based on information provided by a reliable informant) was valid; that the government in executing the search warrant discovered narcotic drugs, hand guns and other evidence that narcotics were being sold from a certain business premises (9300 Woodward Ave., Detroit, Michigan); that the narcotics were not in an area open to the public, but rather in a desk used in the conduct of the business; and that defendant Lemmons owned the building searched and operated the business in the beforementioned premises.

In *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), the Supreme Court stated that probable cause to arrest existed where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Although we regard the probable cause issue in this case as a close one, we hold that the officer had sufficient information to afford him probable cause to believe that Lemmons possessed the narcotics found in the file cabinet. Lemmons' status as a part owner of the business combined with the fact that the narcotics were found in a filing cabinet in the office area of the store not accessible to the general public were sufficient to cause a reasonable

person to have believed that Lemmons and Miss Jones, the store manager on duty at the time of the search, were in control of the office area and possessed the drugs found there. *See, e. g., Johnson v. Wright,* 509 F.2d 828 (9th Cir. 1975), where the court held that it was proper to arrest three occupants of an automobile when the officer discovered a sawed-off shotgun in the vehicle. In so holding, we do not give blanket approval to the indiscriminate arrest of store proprietors solely because contraband is discovered on the premises.

Appellant next contends that the government failed to prove the chain of custody of the foil packets and that the district court erroneously relied on the business records exception to the hearsay rule (as well as violated appellant's Sixth Amendment confrontation clause rights) in permitting Sgt. Mowery to testify to the similarity between appellant's fingerprints and those found on the foil packets.

In another criminal appeal, *United States v. Russo,* 480 F.2d 1228 (6th Cir. 1973), *cert. denied,* 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974), we stated that:

> The Federal Business Records Act was adopted for the purpose of facilitating the admission of records into evidence where experience has shown them to be trustworthy. It should be liberally construed to avoid the difficulties of an archaic practice which formerly required every written document to be authenticated by the person who prepared it. [Citations omitted.] The Act should never be interpreted so strictly as to deprive the courts of the realities of business and professional practices. [Citations omitted.]

480 F.2d at 1240.

■ In this case Sgt. Mowery testified that standard laboratory procedure was followed by Sgt. Nichols who originally received the foil packets. Nichols obtained lifts from some of the packets, noted the origin of each of the lifts, determined that the prints were attributa-ble to Lemmons, and then, also following standard laboratory procedure, requested Sgt. Mowery to verify his opinion. Mowery testified at trial that it was his opinion that the latent prints found on the foil packets matched Lemmons' fingerprints. We hold that, under the circumstances, the business records exception to the hearsay rule, 28 U.S.C. § 1732, was properly relied upon by the district court for the purpose of admitting Mowery's testimony concerning the fingerprint evidence.

■ With respect to appellant's confrontation clause challenge to the admission of this testimony, we hold that because the original examiner was dead and because the trier of fact had a satisfactory basis in Mowery's testimony for evaluating the fingerprint evidence, there was no violation of appellant's rights guaranteed by the Sixth Amendment. *See Phillips v. Neil,* 452 F.2d 337, 346–47 (6th Cir. 1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972). We find no merit to the chain of custody issue since the laboratory examination that established that Lemmons' fingerprints were on the foil packets had been concluded before the tinfoil and lifts were turned over to another officer who did not appear at the trial.

■ Appellant also contends that the search of the office area in the store was improper because the search warrant stated that the premises to be searched were located at 9300 Woodward Avenue and the drugs were found in an area of the store located at 9304 Woodward. The record reveals that the store occupied both the 9300 and 9304 addresses although there was only one public entrance which was located at 9300 Woodward. The 9304 entrance was blocked by a display cabinet. Originally, there were separate businesses in 9300 and 9304, and they were separated by a wall. However, at the time of the search, an archway had been opened between the two addresses and the store used both portions of the building for the business. The search warrant also made it clear

that the store "Imported Fashions of Tomorrow," including the basement and first floor area, were to be searched for drugs. In *United States v. Jordan*, 349 F.2d 107 (6th Cir. 1965), we upheld the search of the second floor of a two-story house over appellant's objection that the second floor was a separate living unit over which he had no control. We observed that appellant was the sole lessee listed on the rental agreement, that the utilities for both floors were contracted for in appellant's name, that he acknowledged the premises to be his residence and that there was no external indication that the house might be divided into more than one living unit before the search was undertaken. As one court has pointed out: the Fourth Amendment "safeguard is designed to require a description which particularly points to a definitely ascertainable place so as to exclude all others." *People v. Watson*, 26 Ill.2d 203, 186 N.E.2d 326 (1962). We hold that the warrant in this case was sufficiently definite to authorize a search of the entire store.

 Appellant also contends that he was denied his constitutional right to a speedy trial. The indictment was returned against him on April 4, 1973, a motion to suppress was filed on April 26, an evidentiary hearing covering parts of four days commenced on October 30, the district court denied the motion for suppression and further motions for discovery in a written order on January 24, 1974, the trial was held on February 26, 27, and 28, 1974, and the district judge found appellant guilty at the conclusion of the trial. We agree with the district court's conclusion that: "The record does not show that the government purposely delayed the trial, nor that defendants have been unduly prejudiced in preparing their defense. The death of [a defense witness] may have been a setback, but the record when viewed in its entirety does not indicate that defendants cannot receive a fair trial. *Barker v. Wingo* [407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971)], *United States v. Marion*, 404 U.S. 307 [92 S.Ct. 455, 30 L.Ed.2d 468] (1971)."

Appellant argues several other issues: (1) whether the search warrant affidavit contained sufficient information to amount to probable cause, (2) whether correct procedure was followed when the search warrant inventory was given to appellant's attorney instead of to him, (3) whether the district court erred in denying appellant's motions for discovery, and (4) whether there is sufficient evidence to sustain the verdict. After careful consideration, we determine that the above issues are without merit and do not require detailed discussion.

Accordingly, the judgment of conviction is affirmed.