STATE of Missouri, Respondent,

v.

Russell Terrell RHONE, Appellant.

No. 59934.

Supreme Court of Missouri,
en banc.

Sept. 12, 1977.

Rehearing Denied Oct. 11, 1977.

James C. Jones, Asst. Public Defender, 2nd Judicial Circuit, St. Louis, for appellant.

William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Defendant, Russell T. Rhone, was convicted of burglary in the second degree by a jury in the Circuit Court of the City of St. Louis. Defendant was sentenced by the trial judge under the Habitual Criminal Act to a term of 10 years imprisonment. Appeal was perfected by defendant to the Court of Appeals, St. Louis District, where the judgment of conviction was affirmed. Upon application of defendant, the cause was transferred here by order of this Court to be determined "the same as on original appeal." Mo.Const. Art. V, § 10.

This case arose as the result of a burglary observed in progress by Patrolman Thomas Schmidt while on foot patrol on Union Boulevard in the City of St. Louis on the evening of May 13, 1974. Approximately 11:30 p.m. that evening, Patrolman Schmidt saw two men in a supermarket which was closed for business but which was well lighted. Officer Schmidt was unable to clearly see the facial features of either man; however, he was able to determine the type of clothing both men were wearing. Patrolman Schmidt testified that one of the men he saw in the market was wearing a dark blue shirt and plaid trousers. This description matched the clothing worn by the defendant when he was apprehended by motorcycle Patrolman Robert Porter who responded to a report of a burglary and who observed the defendant descending from the roof of the burglarized supermarket.

At the time the defendant was taken into custody by Officer Porter, Officer Schmidt was on the roof of the grocery store where he saw a hole that had been cut in the roof in order to gain entry into the building. Also, while on the roof, Patrolman Schmidt discovered and apprehended another man who was believed to be one of the men observed moments earlier inside the market. Patrolman Schmidt next saw the defendant as Patrolman Porter was escorting him from the side of the supermarket building to the alley at the rear of the building. Defendant was searched and found to be in possession of a .38 caliber handgun, which was identified by the owner of the store as belonging to him and kept in the store prior to the burglary.

Ms. Edith Struckhoff was called by the State to testify as the custodian of the records of the St. Louis Police Department Laboratory. Defendant's counsel objected to her reading from a report prepared by police department criminologist Lloyd Hill for the reason, among others, "that no evidence has been put on that the person who did this test is a qualified expert and she could not testify to that * * *." The trial court overruled the objection on the basis of State v. Taylor, 486 S.W.2d 239 (Mo.1972). The following questions were then asked and answers given in an attempt to qualify Lloyd Hill as an expert:

Q. Do you know a Lloyd Hill?
A. Yes, I do.
Q. What position did he hold at the Police Department Laboratory? A. He was a criminologist.
Q. What would the nature of his work as a criminologist entail? A. To examine and compare any clothing and debris that was brought in.
Q. All right. Would this be done in any specific method or procedures? A. Oh, yes.

Q. Do you know approximately how long he was employed by the Police Department Laboratory as a criminologist?

A. I would say approximately a year.

Q. Are there other criminologists employed there in addition to Lloyd Hill?

A. Yes, sir.

Q. Do you know approximately the number of them, how many? A. Approximately 5 or 6.

Q. In order for them to be employed as a criminologist do they have to have certain qualifications as far as you know?

A. Yes.

Q. Do you know basically what those qualifications are? A. Well, they must have degrees in their field.

Q. Would you know the particular degree that Mr. Hill had at the time he worked for the Police Department Laboratory?

A. No, I don't know what degree he had.

Q. And is he presently employed by the St. Louis Police Department? A. No, he isn't.

After the qualifying evidence was elicited, Ms. Struckhoff proceeded to recite from the laboratory report concerning microscopic and spectrographic comparisons performed on the clothes the defendant wore on the night in question which led the preparer of the laboratory report, Mr. Hill, to conclude that the glass fibers and tar material found on the defendant's clothing came from the scene of the burglary. Ms. Struckhoff further stated that she had no personal knowledge of anything reflected in the report and she did not know how the tests were conducted. The laboratory report was offered and received into evidence.

The only assertion on appeal is that the "trial court erred in permitting Edith Struckhoff to testify as to the findings and opinions contained in the police laboratory report prepared by Lloyd Hill. Hill was not shown to be an expert in the subject matter of the report, and therefore his opinion and the report were inadmissible."

In *Allen v. St. Louis Public Service Company*, 365 Mo. 677, 285 S.W.2d 663, at 667 and 668 (1956), this Court took cognizance of The Uniform Business Records as Evidence Law, §§ 490.660–490.690, RSMo 1969, and saw "no reason why a proper expert medical opinion contained in a hospital record should not be accorded dignity equal to that of a similar opinion from the witness stand * * *." The Court then stated that it would *presume* the qualifications of a resident physician of the hospital.

■ We have found little law or comment on the question whether entries representing opinion evidence and made under the Uniform Act are admissible in the absence of a showing that the person making the entries is qualified as an expert. We have concluded that we should adopt the view "that entries in the form of opinions are not admissible if the declarant was not an expert making a statement concerning a matter within his expertise and as to which he would be competent to express an opinion if testifying in person." McCormick on Evidence, 2d Ed., § 307, p. 721; *Standard Oil Co. v. Moore*, 251 F.2d 188, 214 (9th Cir. 1957).

We turn then to a consideration of this case. We cannot *presume* that Lloyd Hill would have been "competent to express an opinion if testifying in person." Therefore, the determinative question is whether, under the evidence adduced, he was properly qualified.

■ It must be shown that a witness has "sufficient experience and acquaintance with the phenomena involved to testify as an expert." *Hyman v. Great Atlanta & Pacific Tea Co.*, 359 Mo. 1097, 1101, 225 S.W.2d 734, 736 (1949). However, a "witness may be competent to testify as an expert though his knowledge touching the question at issue may have been gained by practical experience rather than by scientific study or research." *Herman v. American Car & Foundry Co.*, 245 S.W. 387, 389 (Mo. App.1922). "The authorities generally agree that it would be impracticable to set any absolute standard as to the qualifications of an expert witness; and that of necessity the question must rest largely in

the sound discretion of the trial court." *State v. Rose,* 249 S.W.2d 324, 332 (Mo.banc 1952).

■ According to the evidence adduced, Lloyd Hill had been employed approximately a year by the Police Department Laboratory as a criminologist. The nature of his work was to examine and compare any clothing and debris that was brought in. He must have had a degree in his particular field. In view of this evidence, we cannot say that the trial court abused its discretion in ruling that Lloyd Hill qualified as an expert. *Cf. State v. Taylor,* 486 S.W.2d 239 (Mo.1972).

The judgment is affirmed.

MORGAN, C. J., and HENLEY, FINCH and RENDLEN, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge, dissenting.

I respectfully dissent.

The report of one Lloyd Hill which was admitted in evidence constituted evidence that the defendant was present at the scene of the burglary. It was opinion testimony in that it was the opinion of Hill that the glass fibers and tar material he found on the clothes of the defendant came from the supermarket which was burglarized. This report was admitted in evidence over the objection of defendant that it constituted hearsay and that the maker of the report, Lloyd Hill, was not shown to be an expert. The report was admitted under the Uniform Business Records as Evidence law, secs. 490.660–490.690, RSMo 1969.

The purpose of the Business Records as Evidence law is to allow for the introduction into evidence of documents which would be inadmissible as hearsay except for that law. It obviates the hearsay objection and eliminates the right of the other party to cross-examine the person whose testimony is admitted via the record. There are a number of objections which a party could make to the content of records that are offered in evidence under the act. One of the objections is that the preparer of the record was not expertly qualified, but that objection assumes that the act otherwise applies to the record sought to be admitted in the particular type of proceeding which is taking place. In the instant case the proceeding is a criminal prosecution (not civil) and the purpose of the proffered evidence is to show that the defendant was present at the scene of the robbery.

In order that the issue presented by the contention that the admission of the crime laboratory record can be kept clearly in focus, the following facts which appear in the record must be stated. The defendant testified in this case and claimed that he came upon the scene of the burglary, which was a Fairlane Food store, after the police had arrived. He stated that out of curiosity he walked down a gangway on one side of the food store, saw a Derringer pistol and a roll of coins on the ground and picked them up. At that time he was arrested by one of the officers. Earlier in the case, officer Emil Philipak of the St. Louis police department, evidence technician unit, laboratory division, testified. He stated that he came to the scene and as part of his duties collected certain physical material. He collected tar, tar paper, wood, and insulation from around the hole in the roof of the store, along with other items. He put them in a package and delivered them to the police laboratory. Following the testimony of officer Philipak, Edith Struckhoff, the keeper of the records of the police laboratory, testified. The defendant objected on various grounds, one of which was the testimony would be hearsay; second that he would be deprived of his constitutional right to cross-examine a witness against him; and third that the person who did the test was not qualified as an expert. It seems apparent from the chronology of events in the transcript that defense counsel knew that the prosecution was undertaking to have a certain report admitted in evidence. The prosecutor, in response to defense counsel's objection, and in answer to a court's question, said that he intended, by this witness, to establish that it (the laboratory report) was a business record kept in the ordinary course of business and,

as a consequence, satisfied the hearsay objection. He referred the trial court to *State v. Taylor,* 486 S.W.2d 239 (Mo.1972). The prosecutor also told the court that he would be able to develop from the witness Struckhoff that "she has knowledge of Mr. Hill and what he was and what he did at the lab." The court then answered that under the authority of *State v. Taylor,* the court was of the opinion that the record was admissible under the Uniform Business Records as Evidence Act (secs. 490.660–490.-690, RSMo 1969). The court understood the prosecutor to be saying that the witness had personal knowledge of Mr. Hill, that she would testify as to how long she had known him and the nature of his duties. The examination then continued as is set forth in the principal opinion. The witness knew nothing about how the tests were made, the mode of preparation of the record (report), nothing specific about the qualifications of the author (Hill), and there was no evidence as to why Hill wasn't present in court other than he no longer worked for the police department. She then read from the report those portions that pertained to the clothing of the defendant Rhone and certain items that officer Philipak obtained from the scene. The substance of this report of Mr. Hill, as pointed out in the principal opinion, was that the material taken from the defendant's clothes matched the material found by officer Philipak in or on the burglarized store. The purpose of the testimony was to persuade the jury that the defendant was inside the store and that he did commit the burglary.

*Taylor* involved a prosecution for burglary and the issue on appeal was whether or not the trial court erred in admitting into evidence a St. Louis police department laboratory report. That report was made by one Cordell Brown who did not appear and testify at trial. The witness at trial was a Mr. Joseph Stevens, a chemist for the St. Louis police department, who testified that the exhibit (report) had been prepared by Mr. Brown in the ordinary course of police department business and that he, Stevens, was the custodian of the document. Brown was employed in Denver, Colorado, at the time of trial. Stevens was permitted to testify from the Brown report that certain wood and paint fragments taken from the clothes of the defendant matched certain paint and wood found at the scene. The court's opinion points out that the purpose of the Uniform Business Records as Evidence law is to enlarge the operation of the common-law rule providing for the admission of business records as an exception to the hearsay rule. After disposing of certain objections, the court then dealt with the contention that Cordell Brown, the author of the record, was not available for cross-examination by saying that that contention is answered by *Allen v. St. Louis Public Service Co.,* 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (1956), which *Taylor* quoted from, saying at 486 S.W.2d 242–243: "'Objections to such [business] records as hearsay and as depriving a party of the right of cross-examination are, therefore, not effective if the records have been properly qualified under the Uniform Business Records Act. * * * Since the hearsay objection is obviated, we see no reason why a proper expert medical opinion contained in a hospital record should not be accorded dignity equal to that of a similar opinion from the witness stand; to preserve the right of cross-examination intact as to such matters would be to repeal the statute.' We find no merit to appellant's first point."

In my opinion, it was incorrect to use the holding in *Allen,* a civil case, as the sole authority for overruling the confrontation point made in *Taylor,* a criminal case. In so doing, the opinion assumes and implies that there are no unique constitutional considerations regarding confrontation which apply to criminal cases but not to civil cases. In *Taylor* the confrontation point was overruled by ignoring art. I, sec. 18(a), Mo. Const., and the Sixth Amend. of the U.S. Const. The issue was not resolved but simply avoided. The right to cross-examine in civil cases is undoubtedly part of due process of law in a general sense but is not specifically protected by a special provision in either the United States or the Missouri constitutions as it is in criminal cases.

Art. I, sec. 18(a), Mo.Const., provides, *inter alia,* as follows: "That in criminal prose-

cutions the accused shall have the right to appear and defend in person and by counsel; . . . to meet the witnesses against him face to face; . . . ." This provision in our constitution is the one which constitutionally protects the right of a defendant to cross-examine the witnesses against him in court. I fail to see how a legislative act (Uniform Business Records as Evidence) can be construed so as to justify the abolition of the right of a defendant to confront important witnesses against him and to thereby nullify art. I, sec. 18(a) of our constitution and Amend. 6 of the U.S.Const.

The instant case is a criminal prosecution and, as such, falls squarely within the ambit of art. I, sec. 18(a), Mo.Const., and Amend. 6 of the U.S.Const. The report that was read into evidence is nothing more nor less than the statement of the opinion of Mr. Lloyd Hill. When received in evidence it constitutes testimony of Mr. Hill that, *in his opinion,* the material found on the clothes worn by the defendant came from the interior of the burglarized store. In this case the defendant admitted being at the scene when the police were there but denied having been in the store. There was other substantial evidence of defendant's guilt (one officer testified he caught the defendant coming down from the roof of the building), but the scientific evidence, is, in my opinion, very powerful in this day and age and was of substantial importance to the prosecution in this case. The credibility of the report depends upon whether the jury believes or doesn't believe Mr. Hill's version which was conveyed to the jury via his ex parte statement—the report. But Mr. Hill is not subject to cross-examination; yet, he did "appear" as a witness against the accused via his report on a very important matter—the presence of the defendant inside the burglarized store. In my opinion, the admission of this report constituted a clear violation of art. I, sec. 18(a), Mo. Const., in that this procedure deprived the defendant of his right of confrontation and cross-examination constitutionally guaranteed in Missouri. There is no question but what Mr. Hill's report, when put in evidence in his absence by way of some other witness, is hearsay. It is hearsay because

the person (Hill) who vouches for the accuracy of the information (report) is not present and, therefore, his credibility cannot be tested by cross-examination. That is the essence of the constitutionally protected right of confrontation.

This is not the first instance where the court has been confronted with efforts to get prosecution evidence admitted without subjecting the witness whose information is being offered to cross-examination. In *State v. Brookins,* 478 S.W.2d 372 (Mo.1972), a conviction was reversed and remanded for error in admitting into evidence for the prosecution a deposition of a witness who placed defendant at the crime scene which deposition was taken by the defendant. The point made by the defendant and sustained by this court was that he was denied his constitutional right of confrontation. The court quoted extensively from *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), in setting forth the importance of the right of cross-examination and confrontation. The court also noted that there had been no attempt to return the witness to Missouri to testify.

In *Kansas City v. McCoy,* 525 S.W.2d 336 (Mo.banc 1975), a majority of this court upheld the use of closed circuit television by the prosecution in the presentation of evidence that the substance found on defendant was marijuana as against a claim that he was deprived of his confrontation rights. This was a municipal ordinance violation and this court restricted the application of the opinion to matters quasi civil in nature.

I do not cite *Brookins* and *McCoy* as business-records-as-evidence cases but because those cases show the recent concern of this court over confrontation and cross-examination rights.

In the instant case, the report of Mr. Hill was not crucial to making a submissible case, but it certainly did constitute substantial and powerful evidence of presence in the building. Yet there is virtually nothing in the record to show any qualification of Hill nor any explanation of why he was not present in court.

The statement from *Allen* quoted in *Taylor* that " . . . to preserve the right of

cross-examination intact as to such matters would be to repeal the statute", which is used as the basis of overruling the defendant's point of denial of confrontation, is, to say the least, a non sequitur. This court has not hesitated to strike down a statute that contravened the constitution of this state, nor should this court hesitate to restrict the application of a statute when our constitution so requires.

Art. I, sec. 18(a) guarantees a *defendant* in a *criminal* prosecution the right to be confronted by the witnesses against him so as to be able to cross-examine them. By restricting the operation of secs. 490.660–490.690 to instances where art. I, sec. 18(a) does not apply, is not repealing secs. 490.-660–490.690 at all; it is simply limiting the application of those sections to those witnesses upon which our constitution allows the statute to apply.

Although the language of the Business Records as Evidence law is silent as to whether the law applies to criminal cases as well as civil cases, the courts of Missouri, other states, and the United States, have held that the law does apply in criminal cases. *Phillips v. Neil,* 452 F.2d 337 (6th Cir. 1971); *United States v. Oates,* 560 F.2d 45 (2d Cir. 1977), 21 CLR 2269; and cases listed in Lauer, "Business Records as Evidence in Missouri", Wash. U.L.Q.1964, pp. 24, 49. However, the courts must recognize that the confrontation clauses of the 6th Amend., U.S.Const., and the Missouri Constitution, restrict the application of the Business Records as Evidence law in criminal cases because the evidence admitted under it when the declarant or author of the record is not present is obviously hearsay. But the 6th Amend. confrontation clause does not protect against all hearsay.

In *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970), the court said: "It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this Court has never equated the two, and we decline to do so now."

And, in *California v. Green,* 399 U.S. 149, 155–156, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970), the court stated:

" . . . While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."

And at 162, 90 S.Ct. at 1937;

"We have no occasion in the present case to map out a theory of the Confrontation Clause that would determine the validity of all such hearsay 'exceptions' permitting the introduction of an absent declarant's statements. For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem."

And also at 161–162, 90 S.Ct. at 1936;

"Finally, we note that none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial. The concern of most of our cases has been focused on precisely the opposite situation—situations where the statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial. These situations have arisen through application of a

number of traditional 'exceptions' to the hearsay rule, which permit the introduction of evidence despite the absence of the declarant usually on the theory that the evidence possesses other indicia of 'reliability' and is incapable of being admitted, despite good-faith efforts of the State, in any way that will secure confrontation with the declarant. Such exceptions, dispensing altogether with the literal right to 'confrontation' and cross-examination, have been subjected on several occasions to careful scrutiny by this Court."

In *Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895), the court, in speaking of the confrontation right said:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

In *Commonwealth of Mass. v. Slavski,* 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281 (1923), the court approved the admission into evidence of certificates of an analyst of the State Department of Health as to the alcoholic content of the liquid. These certificates were admitted pursuant to a specific statute over the defendant's objection that he was deprived of his right to confront witnesses under the Massachusetts and United States constitutions. The court's opinion narrates the history of the confrontation clause and states that such clause did not and does not bar all hearsay. Examples of exceptions existing at the time the constitutional provisions were adopted are dying declarations, reproduction of testimony previously given, and certain public records. The certificates in *Slavski* were held admissible as public records which were required to be made pursuant to a particular statute. The court, after narrating an extensive list of records admissible in evidence and those held not to be admissible, stated at 140 N.E. at 469:

"The discussion in many of these decisions relates to the general principles of the law of evidence and the interpretation of statutes. The principle which seems fairly deducible from them is that a record of a primary fact made by a public officer in the performance of official duty is, or may be made by legislation, competent prima facie evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects and involving the exercise of judgment and discretion, expressions of opinion, and making conclusions, are not admissible as evidence as public records. The principle may not be universally applicable and there may be exceptions, but it appears to be available in general as a practical working rule.

"The determination of the percentage of alcohol in liquor at a specified temperature is the ascertainment of a fact by well-recognized scientific processes. Chemical action and measurement in such an analysis do not depend in general upon the quickness of apprehension, retentiveness of memory, temperament, surmises, or conjectures, of the individual. The admission in evidence of the record of such a fact made by a public officer pursuant to statutory obligation would be as likely to be accurate as many of the public records which have been held to be admissible. There would seem to be as little likelihood of variation of result in such an analysis between different chemists as in the observation of the weather, enumeration of proprietors, or the notation of the weights on scales, by other classes of public officers. The general court [legislature] may have felt that it was wise and just with reference to owners of liquor and prospective defendants, as well as to the general public, to pro-

vide for an impartial analysis by a public officer, in order that the fact of alcoholic content in liquor seized might be established according to a scientific standard in which confidence might be reposed."

The report in the instant case was not a public record required by statute nor is there any evidence of any scientific standards pursuant to which the material was tested, compared or analyzed. It is simply a report from a man named Hill about whom the trial court knew nothing except that he worked at the police laboratory for about one year and had a degree of some sort in his field. The nature of the report is just the opinion of Mr. Hill purportedly resulting from a comparison of some kind between materials obtained from different sources. And, again, there is no evidence as to why Hill was not present in court.

Other types of similar evidence are comparison of fingerprints and comparison of handwriting. I have found no cases allowing the admission into evidence of records of handwriting experts or records of fingerprint experts, with one exception. In *United States v. Lemmons,* 527 F.2d 662 (6th Cir. 1976), the following occurred as stated at 665:

"In this case Sgt. Mowery testified that standard laboratory procedure was followed by Sgt. Nichols who originally received the foil packets. Nichols obtained lifts from some of the packets, noted the origin of each of the lifts, determined that the prints were attributable to Lemmons, and then, also following standard laboratory procedure, requested Sgt. Mowery to verify his opinion. Mowery testified at trial that it was his opinion that the latent prints found on the foil packets matched Lemmons' fingerprints. We hold that, under the circumstances, the business records exception to the hearsay rule, 28 U.S.C. sec. 1732, was properly relied upon by the district court for the purpose of admitting Mowery's testimony concerning the fingerprint evidence.

"With respect to appellant's confrontation clause challenge to the admission of this testimony, we hold that because the original examiner was dead and because the trier of fact had a satisfactory basis in Mowery's testimony for evaluating the fingerprint evidence, there was no violation of appellant's rights guaranteed by the Sixth Amendment. See *Phillips v. Neil,* 452 F.2d 337, 346–47 (6th Cir. 1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972). We find no merit to the chain of custody issue since the laboratory examination that established that Lemmons' fingerprints were on the foil packets had been concluded before the tinfoil and lifts were turned over to another officer who did not appear at the trial."

It is seen from *Lemmons* that even there the opinion that the fingerprints were from the same person came from the testifying witness Mowery who was subject to cross-examination and it was Mowery's evidence that the court held constituted a satisfactory basis for evaluating the fingerprint evidence.

In the instant case there is absolutely no evidence, in my opinion, which would constitute any satisfactory basis for evaluating the evidence contained in the report. Nor is there any basis shown in the record upon which the trial court could have concluded that such a comparison test and the resulting opinion was so routine as to be virtually immune from differing opinions.

I have a great deal of doubt as to whether this report even constitutes a record of an "act, condition or event" or that it is a "business record" as those terms are used in sec. 490.680, RSMo 1969. It was certainly not relied upon in the regular course of business. It is, in my opinion, simply a memorandum made by a member of the prosecuting team to be utilized solely for the purpose of the criminal case against this defendant. In *Kitchen v. Wilson,* 335 S.W.2d 38, 44 (Mo.1960), the court said: "'Of course, if it should appear that such records have been made and kept solely for a self-serving purpose of the party offering them in evidence, it would be the duty of a trial court to refuse to admit them.' [citation omitted]."

For all of the above reasons, but particularly because I believe that comparison-

type-opinion evidence which is offered for the purpose of placing the defendant at the scene of the crime is tantamount to identification evidence, is given great weight by a jury, is subject to different conclusions and, therefore, is subject to the confrontation clauses of both the United States and Missouri constitutions, I dissent.