**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Arnold HAMILTON,
Defendant–Appellant.**

**No. 41476.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 7, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 14, 1980.

Application to Transfer Denied
Jan. 13, 1981.

Scott Richardson, St. Louis, for defendant–appellant.

John Ashcroft, Atty. Gen., Mary C. P. Pincus, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

SNYDER, Judge.

Arnold Hamilton appeals from his conviction of first degree robbery, § 560.120, RSMo.1969 and armed criminal action, § 559.225, RSMo.Supp.1976 and consecutive sentences of ten years' imprisonment on the robbery count and five years on the armed criminal action count. The first degree robbery judgment is affirmed. The armed criminal action judgment is reversed.

Appellant alleges that the trial court erred because it: (1) prohibited defense counsel from personally conducting a voir dire examination of the jury panel and refused to ask the panel questions submitted to the court by appellant's attorney; (2) allowed the testimony of a witness for the state concerning fingerprint tests conducted on a box left at the scene of the robbery because the tests on the box were conducted by a subordinate of the witness who was unavailable to testify; and (3) overruled appellant's objections to portions of the state's closing argument which appellant claims placed an unconstitutional burden upon appellant to testify and produce evidence.

According to the state's evidence, on July 21, 1977 at about 8:00 p. m. someone rang the doorbell of the St. Louis residence of Yvonne Perkins. She did not open it at

first, but inquired who was there from inside a second story door leading to a balcony. The caller replied that it was Jeffrey and asked her to come downstairs. She complied with his request and opened the first floor door. She had never seen the man before. The man then asked her a series of questions about the health of her children and her sister, referring to them by name. He offered to sell her some children's clothing in a Libson box which he was carrying, but she told him no. He then told her his ride had left him and asked if he could use her phone. She agreed and led him up the stairs to her apartment. After they arrived upstairs, she led him into the living room, turned around, and saw that he was holding a hand gun. At this time she was standing only a few feet from him and the lighting conditions were described as very good. While pointing the gun at Ms. Perkins the man asked her if she had any money. She replied that she did not but got her purse which contained a couple of dollars and gave it to him. Once he had the purse, he went into the bedroom, came out and asked Ms. Perkins where her ring was. She replied that she did not have one because she had pawned it a few days earlier. He then put Ms. Perkins into a small room near the stairs and left the apartment taking her purse, but leaving the Libson box. Several minutes later Ms. Perkins came out of the room, telephoned her sister and then called the police.

Several days after the robbery, the police requested that Ms. Perkins come down to the station house to examine some photographs. She was unable to identify the robber. About a month later, two police officers brought a handful of photographs to her at home and at that time she picked out the appellant as the man who robbed her. She later picked appellant out of a line—up and identified him as the man who robbed her, and she made a positive identification of appellant at the trial.

Appellant offered no evidence. Additional facts will be related as they apply to the points raised by appellant.

Appellant first charges that the trial court erred by refusing to allow appellant's attorney personally to conduct the voir dire of the jury panel and for refusing to ask the jury panel certain questions submitted to the court by appellant.

■ Appellant failed to preserve the first part of this challenge for appellate review because he did not object to the trial court's refusal to allow him personally to conduct the voir dire examination, nor did he include this alleged error in his motion for new trial. Rule 29.11(d); *State v. Fingers*, 564 S.W.2d 579, 584[11–14] (Mo.App.1978); *State v. Darby*, 563 S.W.2d 131, 132[2] (Mo. App.1978).

Further, appellant in his brief admits that "there is no constitutional provision or statutory authority guaranteeing that a defendant's attorney be allowed to conduct the voir dire examination." Indeed, the Federal Rules of Criminal Procedure (Rule 24(a)) grants the district court the discretion to conduct the entire voir dire itself or to allow the lawyers to examine the jury panel. *U. S. v. Lewis*, 547 F.2d 1030, 1036[13–15] (8th Cir. 1976), cert. denied 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). None of the federal cases cited by appellant stand for the proposition for which he cites them. Further, appellant's reliance on decisions in Nebraska, Arkansas and Illinois is misplaced as those decisions rely upon longtime practice and custom in those states.

■ The second part of appellant's challenge must also be rejected. He charges that the trial court erred by refusing to ask certain questions requested by appellant relating to identification. However, appellant has chosen not to present that portion of the transcript detailing the voir dire. A transcript on appeal must contain all of the records and proceedings necessary to a determination of the questions presented for decision, and where any such items are absent there is nothing for the appellate court to decide. Rule 81.12(b), Rule 81.14(a). *Ward v. State*, 451 S.W.2d 79, 81[1–3] (Mo.1970). The burden is on the defendant to file a complete transcript for

appellate review. *State v. Dodson*, 556 S.W.2d 938, 947[11–12] (Mo.App.1977).

The record contains only a short statement by the judge that he intended to conduct the voir dire. The only reference to questions propounded by appellant's attorney is as follows:

"I want to—at this time defense wants to renew the objection to this jury panel—the jury selected—on the basis of the refusal to give certain voir dire questions, namely the question on the identification issue and on the range of punishment."

Nowhere either in the transcript or appellant's brief is it indicated what specific questions appellant requested the trial court to ask the panel. Absent the questions, this court cannot hold that the trial court committed error. *State v. Ross*, 502 S.W.2d 241, 249[12] (Mo.1973); *State v. Crow*, 487 S.W.2d 461, 465[5] (Mo.1972).

In his next point appellant claims the trial court erred in admitting the testimony of Mr. Messler, chief criminalist of the Laboratory Division of the St. Louis Police Department. Messler testified as to the results of a test conducted on the Libson box which was left behind by the robber in Ms. Perkin's apartment. The actual tests conducted on the box were performed by Ms. Cameron who was unavailable for medical reasons at the time of trial. She wrote a lab report, state's Exhibit No. 5, in which her findings were summarized. Messler testified that Ms. Cameron performed a test using ninhydrin which reacts with protein materials and is used for obtaining fingerprints from cardboard. The results of the test were contained in her report and read to the jury by Messler. "[T]he box, was processed for presence of latent fingerprints examination. Box disclosed the presence of identifiable prints." John Salamone testified that he was employed by the Identification Division of the St. Louis Police Department and testified that one of the prints on the box was that of the appellant, Arnold Hamilton. A palm print was also on the box but it was not made by Arnold Hamilton. Salamone further testified that there were other partial prints on the box but they were not identifiable.

Appellant charges that it was error to admit state's Exhibit No. 5 and to allow Messler to testify to the results of the tests performed by Ms. Cameron because this denied appellant his constitutional right to confront the witnesses against him as required by the Sixth Amendment to the United States Constitution. He argues he was prejudiced by the unavailability of Ms. Cameron and an inability to cross–examine her about the report because of a discrepancy between her reference in the report to identifiable *prints* (plural), and the testimony of Salamone that there was only one identifiable *print* (singular). Appellant states that this could be a matter of semantics or it could mean that a print disappeared between Ms. Cameron's examination and Salamone's examination of the box.

This point must be ruled against the appellant because of the law set out in *State v. Rhone*, 555 S.W.2d 839, 841 (Mo. banc 1977) and *State v. Taylor*, 486 S.W.2d 239 (Mo.1972).

In *Rhone*, the Supreme Court of Missouri held that expert opinions contained in business records are admissible in criminal trials under the Uniform Business Records as Evidence Act if the person making the report is qualified as an expert. There was more evidence of the qualifications of Ms. Cameron as an expert in the case under review than there was as to the expert in *Rhone*. In *Rhone*, it was shown that the expert whose qualifications were subject to attack was a criminologist who had been employed one year by the St. Louis Police Department. It was not shown what degree he had but there was testimony that a degree was necessary to work in the department. The supreme court ruled that the trial court did not abuse its discretion in ruling that he was qualified as an expert and admitting his report under the Uniform Business Records as Evidence Act.

■ In the case at bar, Mr. Messler, Ms. Cameron's supervisor, testified she was a criminalist employed by the St. Louis Police Department with a bachelor of science degree in chemistry and a masters degree in

education from St. Louis University, had been employed in that capacity for nine-and-a-half years, that criminalists have a method of developing fingerprints through a ninhydrin test and that Ms. Cameron was capable of performing this test and did perform this test from time to time within his personal knowledge. Under these circumstances, the trial court did not err by ruling that Ms. Cameron was qualified as an expert and that her lab report, properly identified, was admissible under the Uniform Business Records as Evidence Act.

Appellant finally contends that the trial court erred in overruling his objections to certain statements made by the prosecutor during closing argument as a reference to the appellant's failure to testify.

The prosecuting attorney's statements were as follows:

1. "Well, let me put it like this. You heard evidence that it was a gun. O.K.? You have not heard any evidence at all to anything contrary to that."

2. "We don't ask you to come in and say, 'Well, we charged him with that you decide whether he's guilty,' and never put anything on the stand. O.K. You listen to people say things up here. Now, did anybody say anything at all–."

3. "You tell me. Did anybody say anything at all on this stand that you could say was a reasonable theory of innocence; anything at all to where you got facts or testimony that you could base a reasonable theory of innocence? Did you hear anything like that?"

4. "Was there any testimony in the trial that she was not robbed? She said the man that robbed her left that box behind. Is there any testimony in this trial that that box was not left there?"

■ Appellant asserts these statements were an improper reference to his failure to testify. Section 546.270, RSMo.1978 and Rule 26.08 (new Rule 27.05) provide that if the accused shall not avail himself of his right to testify, his failure to testify should not be referred to by any attorney in the case nor be considered by the court or the jury. However, it is permissible to argue that the defendant did not offer any evidence or that the evidence is uncontradicted. After an examination of the statements complained of, in the context of the argument in which they were made, this court finds them to be permissible under the law.

■ In *State v. Morgan*, 444 S.W.2d 490 (Mo.1969), the supreme court reviewed some of the cases in which this issue has arisen and said:

"[T]here is no error in refusing to declare a mistrial for arguing that 'the defense was free to offer any evidence they had, and none was forthcoming,' *State v. Thomas*, Mo.Sup., 393 S.W.2d 533, 538[12]; *State v. Hodge*, Mo.Sup., 399 S.W.2d 65, 68[5], or that ' "The State's evidence stands uncontradicted in this case. When the State has concluded its case, the defense was free to offer any evidence it chose." ' *State v. Siekermann*, Mo.Sup., 367 S.W.2d 643, 651[17]. And see five similar rulings cited and quoted from on pages 651 and 652. As stated in *State v. Michael*, Mo.Sup., 361 S.W.2d 664, 667, the prohibition of § 546.-270, RSMo.1959, and Criminal Rule 26.08 is against comment that *the accused* did not testify; not that the defendant did not offer any evidence."

Id. at 493 [emphasis in original]. Here the prosecutor's comments constituted neither a direct nor indirect reference to the failure of the defendant to testify, and hence were permissible. This final point is also ruled against appellant.

In a pro se supplemental brief appellant contends correctly that it was error to convict him of first degree robbery and armed criminal action arising out of the same set of facts because it violated his constitutional protection against double jeopardy.

■ The Missouri Supreme Court in *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), a Rule 27.26 proceeding, reversed a conviction for armed criminal action be-

cause it placed appellant twice in jeopardy for the same offense in a case in which appellant was also convicted of first degree robbery for the same acts. The United States Supreme Court then vacated the first *Sours* decision and remanded the case for reconsideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980). Upon reconsideration, in *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980) the Missouri Supreme Court again held that the *Sours* armed criminal action conviction was reversible error because it placed appellant in double jeopardy in violation of his rights under the Fifth Amendment to the United States Constitution. The second *Sours* decision is controlling and the armed criminal action conviction here must be reversed as plain error affecting substantial rights and resulting in manifest injustice. Rule 27.-20(c).

The first degree robbery judgment is affirmed. The armed criminal action judgment is reversed.

STEWART, P. J., and WEIER, J., concur.