STATE of Missouri, Respondent,

v.

Edgar CARTER, Appellant.

No. WD 34375.

Missouri Court of Appeals,
Western District.

April 3, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
May 29, 1984.

Application to Transfer Denied
June 19, 1984.

Robert G. Duncan, Kansas City, for appellant.

Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DOWD, S.J., and REINHARD, S.J.

DOWD, Special Judge.

Defendant, Edgar Carter, was convicted in a jury-tried case of murder in the second degree, § 565.004 RSMo 1978, and sentenced to life imprisonment. We affirm.

The facts adduced at trial are as follows: On May 15, 1979, the body of the victim, Orethia Haney, was found wrapped in a plastic Jones store bag and bed sheet with her feet tied together by an electrical cord. Lydell Thomas who eventually became a witness for the state in the case at bar was originally charged and convicted of the murder. The charges and conviction were later dismissed.

At this trial Thomas testified he originally met the defendant in the penitentiary.

On March 17, 1979, Thomas was released from prison and the defendant and another man named Mondaine picked him up in Columbia and took him to Kansas City. Thomas was informed that Mondaine wanted the defendant to work in his organization which was a "shooting gallery" or a house where the customers would buy the drugs and then use them on the premises.

Thomas further testified that sometime in early May of 1979 he saw the victim arrive at Mondaine's house and go up to the third floor. The defendant came down a short time later, and the victim soon followed. Subsequently, Mondaine arrived at the house and after going up to the third floor, claimed some drugs were missing from his refrigerator and that the victim had stolen them. The defendant, Mondaine, and a man named L.C. Ward went to look for the victim who lived at the Commodore Hotel.

Another witness, James Moore, who also lived at the Commodore Hotel testified that at approximately noon on May 10, 1979, he was waiting for a friend and decided to go buy some cigarettes. On the way, he met the defendant and Mondaine. He subsequently observed Mondaine and the defendant leaving the hotel with the victim. The victim was barefoot and crying and they were half dragging and half carrying her out of the building. They put the victim in Mondaine's jeep and drove off. Moore left but returned to the hotel and the victim's apartment where he saw two men and eventually L.C. Ward who took her purse and sandals.

Lydell Thomas also testified Mondaine questioned the victim about the drugs and then ordered the defendant to kill her. The defendant hit the victim knocking her down the stairs to the basement. Thomas, Mondaine, and the defendant went down to the basement where the defendant broke off an electrical cord and wrapped it around the victim's neck, and pressed his fingers against the cord. Thomas left to answer the door but returned a few moments later to find the victim dead. The victim's hands and feet were bound with electrical cord and then put in a Jones store bag. It was discovered a few days later in a vacant lot.

■ Defendant raises four points of error. In his first point, defendant claims there was insufficient evidence to support a verdict of guilty in that there was no credible or substantial evidence establishing the cause of death. When reviewing the sufficiency of the evidence, all evidence and inferences tending to support the verdict are accepted as true. *State v. Puckett*, 611 S.W.2d 242, 244 (Mo.App.1980). Furthermore, the state may use circumstantial evidence to establish the cause of death. *Holtkamp v. State*, 588 S.W.2d 183, 187 (Mo.App.1979); *State v. Black*, 611 S.W.2d 236 (Mo.App.1980). We find there was sufficient evidence, both direct and circumstantial that the cause of death was strangulation. First, Dr. Bonita J. Peterson, the medical examiner from the Jackson County Coroner's office testified that a thorough autopsy revealed no injuries and also dismissed the possibility of disease. By process of elimination and based on a reasonable medical certainty, Dr. Peterson concluded the victim died by asphyxiation.

■ Defendant, in essence, argues the evidence was insufficient because the coroner testified without a factual basis since she could not positively state the cause of death but utilized a process of elimination in arriving at her conclusion. We are not persuaded by this argument. The trial court has wide discretion in admitting opinion testimony and the Doctor's testimony is not inadmissible simply because she could not absolutely state the cause of death. *State v. Mondaine*, 655 S.W.2d 540, 543 (Mo.App.1983); *Holtkamp v. State*, 588 S.W.2d at 187. Dr. Peterson testified as to what she considered to be the probable cause of death given the facts and based on her experience as a medical examiner. Furthermore, other evidence corroborated her opinion that the death was by asphyxiation. Specifically, Lydell Thomas testified he witnessed the defendant wrap an electrical cord around the victim's neck and press against it with his fingers. He returned after a few moments absence to find the

victim dead. This alone is sufficient to establish the cause of death and clearly corroborates the coroner's finding of death by asphyxiation. Additionally, the body was found in the manner described by Thomas, this in turn, corroborating his testimony.

■ The coroner's inability to positively determine the exact cause of death was only a factor for the jury's consideration. Moreover, the state need not exclude every other possibility of death especially where the causal connection can be established as it was here by medical testimony supported by corroborating evidence. *State v. Hill*, 614 S.W.2d 744, 748 (Mo.App.1981).

■ Finally, defendant argues Thomas' inconsistency as to the exact date of the incident supports his contention that the state failed to prove the cause of death in that there was testimony the victim was alive several days after the alleged strangulation. We disagree. While Thomas may have been confused as to the date the abduction and strangulation occurred, he never professed to know the exact date and the body was found in the condition he described. It was within the province of the jury to weigh all of the testimony in arriving at their verdict, including any inconsistent statements. *State v. Holt*, 592 S.W.2d 759, 774 (Mo. banc 1980). We find there was sufficient evidence establishing the cause of death, and defendant's first point is denied.

In his second point, defendant charges it was error to admit over his hearsay objection two toxicology reports submitted by a Dr. Valentine claiming it denied him both his right to confront the witness against him and the opportunity to cross-examine Dr. Valentine about the exact nature of the tests conducted.

■ It is well established that expert opinions contained in business records are admissible in criminal trials under the Uniform Business Records as Evidence Act[1] if the person making the report is qualified as an expert. See *State v. Rhone*, 555 S.W.2d 839, 841 (Mo. banc 1977); *State v. Hamilton*, 612 S.W.2d 141 (Mo.App.1980). Trial courts are also accorded wide latitude in determining whether sufficient foundation has been established to justify the admission of records under the Act. *State v. Boyington*, 544 S.W.2d 300, 305 (Mo. App.1976). Implicit in this, however, is also the fact that the minimal requirements set forth in the Act must be complied with. In the instant case Dr. Peterson testified she was the Jackson County Medical Examiner and had been employed in that capacity for approximately nine years. She also testified she had a doctor of medicine degree from Columbia University in New York City and special training in pathology for a period of five years. Dr. Peterson further testified that Dr. J.L. Valentine was a pharmacologist presently located at Oral Roberts University in Tulsa, Oklahoma. At the time of the autopsy in this case, Dr. Valentine performed toxicology work for the Jackson County Medical Examiner's Office because the coroner's office was not equipped to run the necessary tests. Samples for the toxicology tests were sent to Dr. Valentine who analyzed them and submitted the results all in connection with the autopsy and the coroner's office.

■ From Dr. Peterson's testimony, the trial court was justified in determining both she and Dr. Valentine were qualified as experts and that the records were prepared at or near the time of the act as required by statute. The testimony further established the reports were prepared in the regular course of business. Again, they were prepared in connection with an autopsy being conducted by the Jackson County Coroner's office. It is common practice for medical examiners in determin-

---

1. A record of an act, condition, or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission. § 490.680 RSMo 1978.

ing the cause of death to rely on test results submitted by other technicians and physicians, especially in a case such as this where the coroner's office was not equipped to perform the necessary tests.

The state's attempt, however, to qualify the exhibits under the Act failed because the record is devoid of any testimony describing the mode of preparation. The exhibits in question contained only conclusions and no specifics detailing exactly what tests were performed to reach the results set forth in the reports. Moreover, Dr. Peterson also failed to note what tests could or should have been run. While the trial court does possess great discretion in the admission of such evidence, it does not have absolute discretion to admit evidence failing to comply with one of the requirements. If properly identified and detailed as to the mode of preparation, there is no question the reports would have been admissible, but under the circumstances, the exhibits were not qualified within any exception to the rule excluding hearsay and should not have been admitted in evidence.

■■■■■ We note, however, the record establishes no prejudice occurred to defendant from the admission of these reports. Considerable other evidence disclosed the victim died by strangulation and not of a drug overdose. If evidence is improperly admitted, but other evidence before the court establishes essentially the same facts, there is no prejudice to defendant and no reversible error. *State v. Zagorski*, 632 S.W.2d 475 (Mo. banc 1982). Point denied.

■■■■ As to his third point, defendant argues a medical witness may not base his conclusions on hearsay evidence, and that Dr. Peterson's testimony was inadmissible because it was based in part on the two toxicology reports in question. While Dr. Peterson considered the reports in reaching her decision, she also testified they did not lead her to a specific cause of death, but simply ruled out a drug overdose. Based on a complete internal and external examination, apart from these reports, Dr. Peterson also concluded there was no evidence

of trauma or disease. By a process of elimination which included the dismissal of a drug overdose, she then determined the victim died of asphyxiation.

In light of the corroborating evidence, namely Thomas' testimony, the condition of the body and Dr. Peterson's considerable medical expertise, we are of the opinion that the submission of Dr. Peterson's testimony concerning the cause of death was not prejudicial.

Finally, defendant complains the court erred in overruling his motion for judgment of acquittal and that the verdict was not supported by substantial or sufficient evidence because the only evidence linking defendant to the crime was inconsistent, contradictory, and unbelievable. He further contends that due to Lydell Thomas' inconsistencies, the state failed to establish that defendant participated in the crime.

■■■■ First, it is the function of this court to only determine if there was sufficient proof from which the jury could have found the defendant guilty as charged. *State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981). When viewing the evidence in the light most favorable to the state, we find that both the direct and circumstantial evidence previously set forth supports the verdict in this case. There is no question the jury was well aware of the inconsistencies in Thomas' testimony as well as testimony and circumstances corroborating his statements. Both Thomas' credibility and the effects of conflicts or inconsistencies in any testimony were questions for the jury. It was within their province to believe all, some, or none of the witness' testimony in arriving at their verdict. *State v. Pinkus*, 550 S.W.2d 829, 838 (Mo.App.1977). *State v. Lawson*, 585 S.W.2d 247, 250 (Mo.App. 1979). Point denied.

The judgment is affirmed.

All concur.