KANSAS CITY, Missouri, Respondent,

v.

William C. McCOY, Appellant.

No. 58650.

Supreme Court of Missouri,

En Banc.

July 14, 1975.

Aaron A. Wilson, City Atty., Louis W. Benecke, City Prosecutor, Walter J. O'Toole, Jr., Asst. City Prosecutor, Kansas City, for respondent.

Robert L. Shirkey, Kansas City, for appellant.

HENLEY, Judge.

This case involves the question of whether, in the trial of an accused for violation of a municipal ordinance, the confrontation clause of the sixth amendment to the federal constitution requires that an expert witness giving testimony against him be physically present in court.

William C. McCoy (defendant) was charged with, tried in the municipal court, and convicted of possession of marijuana in violation of § 18.152 of the revised ordinances of the city of Kansas City, Missouri. He appealed to the circuit court of Jackson county and, upon trial de novo with the same evidence, was again found guilty and sentenced to imprisonment for 30 days at the municipal farm. From that judgment of conviction he appealed to this court claiming that a determination of the issues involves construction of the confrontation clause of the sixth amendment to the constitution of the United States.[1] We affirm.

Defendant was arrested for two traffic offenses. In the process of "booking" him on those charges he was searched by a police officer preparatory to incarceration pending arrangements for his release on bail. During this search a plastic bag containing a substance which appeared to be marijuana was found on his person. Chemical analysis of this substance confirmed that it was marijuana and the instant charge was filed.

The evidence of the city that the substance found on defendant's person was in fact marijuana was presented to the municipal court, and later to the circuit court on appeal, by means of closed circuit television[2] connecting the courtroom with the police crime laboratory approximately 12 miles from the courthouse.

Dr. Mattias Yoong, the city's witness, was located in an office at the crime laboratory while testifying in response to questions propounded by city's counsel, who was located in the courtroom. Present in the courtroom during this witness's testimony, in addition to the city attorney, were the judge, the defendant, his attorneys, and several spectators, unidentified except that two were reporters for news media. Present in the crime laboratory office while Dr. Yoong was testifying were the Director and assistant Director of the laboratory and two other chemists. The electronic equipment used in this presentation which was visible in the courtroom and in the crime laboratory, consisted of two stationary television cameras, two monitors which appear to be ordinary television sets and microphones for use by the judge and counsel located in the courtroom, and a camera, monitor and microphone located in the laboratory.

During the examination of Dr. Yoong by counsel, each could see and hear the other as well as see and hear and be seen and heard by the trier of fact (the judge) and the defendant, the transmission of the images and the voices being instantaneous. As presented in this court, the picture and voices were clear and distinct.

Dr. Yoong testified on direct examination, over objection of defendant based on

1. He was released on his own recognizance by the municipal court pending final disposition of these appeals.

2. The video tape of the presentation of this evidence was preserved, made a part of the transcript on appeal, and was viewed and heard by this court when the case was argued.

the above-stated sixth amendment grounds, that he had made a chemical analysis of the substance taken from defendant's person and determined that it was marijuana. Defendant's counsel had ample opportunity to cross-examine the witness but declined to do so. In addition to his objection to Dr. Yoong's testimony on sixth amendment grounds, defendant also contends that this testimony was not admissible because it was not the best evidence since the witness was not physically present.

Referring to this right of an accused, the Supreme Court of the United States said in *Mattox v. United States,* 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895):

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case.

\*  \*  \*  \*  \*  \*

"We are bound to interpret the constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject—such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and further than the safety of the public will warrant." See also: *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972).

In *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) the court, considering a claim of denial of the sixth amendment right of confrontation, struck down a prosecutor's tactic of calling a convicted accomplice of the defendant to the witness stand, securing a refusal to testify, and then using the refusal as a springboard to read the accomplice's alleged confession into the record without affording the defendant an opportunity to cross-examine. But in discussing the right, the court also said: "Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of *physical confrontation.*" 380 U.S. at 418, 85 S.Ct. at 1076. (emphasis supplied)

The Supreme Judicial Court of Massachusetts in *Commonwealth v. Harvard,* 356 Mass. 452, 253 N.E.2d 346[7, 8] (1969), a case involving an appeal from a conviction of possession of marijuana, held that the right of confrontation was not denied by the admission in evidence of a certificate of the state's Department of Public Health that its analysis of the contents of a bag showed that it was marijuana. 253 N.E.2d at 351–352.

These cases all involve convictions of felonies under the general law; here, we are concerned with a case involving prosecution and conviction of violating a municipal ordinance, a proceeding said to be "civil in nature, although somewhat criminal in respect to some of the prescribed procedure." *Delaney v. Police Court of Kansas City,* 167 Mo. 667, 67 S.W. 589, 591 (1902); *State ex rel. Cole v. Nigro,* 471 S.W.2d 933, 936[2] (Mo. banc 1971).

We have the view that to require the *physical* presence of an expert witness against one accused of violating a municipal police regulation would be to require more than the confrontation clause rights of an accused demand in many instances of prosecutions for felonies. Today we have means of communication not available only a few years ago. We can now by electronic means project the image and voice of man clearly and distinctly at the speed of light and control that means and insure its integrity by closed circuit and monitors. While Dr. Yoong was not physically present in the courtroom, his image and his voice were there; they were there for the purpose of examination and cross-examination of the witness as much so as if he were there in person; they were there for defendant to see and hear and, by the same means, simultaneously for him to be seen and heard by the witness; they were there for the trier of fact to see and hear and observe the demeanor of the witness as he sat miles, but much less than a second, away responding to questions propounded by counsel.

The court did not err in the admission of this evidence by use of closed circuit television.

■ Relying principally on *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), defendant also contends that he was denied due process of law guaranteed by the fifth and fourteenth amendments to the constitution of the United States in that (1) a television camera was within ten feet of him; (2) two reporters were in the courtroom taking notes; and (3) a microphone on the counsel table within two feet of him inhibited private communication with his counsel. This, defendant says, created a spectacle, a circus atmosphere in the courtroom.

The judge who heard the case in the de novo trial was presented the same evidence and found that "[t]he atmosphere in the courtroom * * * was calm, judicial decorum was maintained throughout the proceedings, and the electronic equipment was installed in an unobtrusive manner * *;" and "that there was no circus atmosphere in the courtroom, and nothing remotely approaching the circumstances in the Sheppard case * * *." Our review of the record persuades us that the circuit judge's findings and conclusions were not erroneous.

The defendant had a fair trial and was not denied due process by the presence of reporters and the location and use of the described electronic equipment.

■ The judge presiding at the de novo trial found also that defendant and his counsel did confer privately at the counsel table notwithstanding the close proximity of the microphone; that he (the judge) actually observed them conferring, but their conversations were not recorded on the video tape. Our conclusion from our review of this record agrees with the finding of the trial judge. There was no invasion of the attorney-client privilege by the location of this microphone and the point is ruled against defendant.

■ Defendant's next point is that "[t]he involuntary reproduction of defense counsel's image and voice is contrary to the canons of ethics (Rule 4, Code of Professional Responsibility), and contrary to Rule 2.35, canons of judicial ethics (now Rule 2, Code of Judicial Conduct), which state that televising of court proceedings should not be permitted."

The Code of Professional Responsibility (DR 2–101) bans publicity or public advertising by a lawyer calculated to attract clients; the ban is rooted in the public interest. This closed circuit television was not available for general view by the public; it was "closed" to the public. The record discloses that while the microwave beam by which the picture and sound were projected across country could be intercepted by anyone, as defendant says, to do so, the intercepter would have to have and know how to use very expensive and highly sophisticated electronic equipment; an ordinary television set generally available to and used by the public would not suffice. The type of projection of counsel's image and voice employed in this case is not that which Rule 4 proscribes. Nor is it the type of "televising" proscribed by Rule 2.35 (now Canon 3, subd. A(7) of Rule 2, Code of Judicial Conduct) relating to the televising of court proceedings.[3]

▆ Defendant's last point is that the court erred in admitting in evidence the marijuana found on his person, because it was "illegally and unconstitutionally seized." The search and seizure in this case, like that in *State v. Darabcsek,* 412 S.W.2d 97 (Mo.1967), was made as a part of the "booking" procedure in connection with defendant's arrest for another offense and was preparatory to his incarceration. The search in that case also produced evidence of unlawful possession of a drug. In *Darabcsek, supra,* the court approved the search and seizure, holding that it was a reasonable procedure for the protection of other prisoners, attendants, and the defendant himself. There is no merit in the point.

The judgment is affirmed.

HOLMAN, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed; SEILER, C. J., and MORGAN, J., dissent and concur in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent. This appeal comes here basically as a "test" case in which the prosecuting authorities in Kansas City seek to find out if the presentation of oral testimony over closed circuit television where the witness is not present in court is permissible under the confrontation clause of the U.S. Constitution, Amendment VI. Defendant nowhere asserts rights under the Constitution of Missouri 1945, Art. I, Sec. 18(a), V.A.M.S., and, therefore, the principal opinion does not consider the issues under the Missouri Constitution.

I realize that the principal opinion is narrowly drawn so as to restrict the holding to the confrontation clause of the U.S. Constitution, Amendment VI, and then only to a prosecution for a municipal ordinance violation where the witness utilizing closed circuit television is in the "expert" category and the proceeding is characterized as "civil in nature, although somewhat criminal in respect to some of the prescribed procedure."

In my opinion, the facts of this case do not portray a sufficiently clear picture of the use of closed circuit television with respect to confrontation and cross-examination rights under the Sixth Amendment for this court to really come to grips with the problem.

Here, there was no serious contention that the substance was not marijuana and defense counsel did not even undertake to cross-examine the expert witness. We do know that there were four people in the room with the witness who were not shown on television, and there was no representative of the defendant there at all. We also know that there can be no handling of exhibits between either counsel and the witness. The "demeanor" of a witness

3. Canon 3 A(7)(a) of Rule 2 (effective July 1, 1975) provides that the trial judge may authorize the use of electronic and photographic means for the *presentation* of evidence.

comes across differently over television than when the witness is personally present in court. The foregoing are merely some of the defects, as I see it, that are apparent from viewing the television tape.

Under the facts of this case and the manner in which the defendant's attorney conducted the defense, I question whether there was any prejudice to the defendant from the use of closed circuit television where the testimony was restricted to identifying a substance as marijuana and where the defendant's attorney made no effort to cross-examine this witness or any other witness as to the identity of the substance.

Nevertheless, the principal opinion will function as an approval of a procedure which, under the facts of this case, is not shown to protect or satisfy the confrontation and cross-examination rights of a defendant under the U.S. Constitution, Amendment VI, and, therefore, I dissent.