STATE ex rel. Carl TURNER, Relator,

v.

Honorable Byron L. KINDER, Judge, and Honorable James F. McHenry, Judge, Circuit Court, Cole County, Respondents.

STATE ex rel. Mark ARNOLD, et al., Relators,

v.

Honorable Byron L. KINDER, Judge, and Honorable James F. McHenry, Judge, Circuit Court, Cole County, Respondents.

STATE ex rel. Willie JACKSON, et al., Relators,

v.

Honorable Byron L. KINDER, Judge, Honorable James F. McHenry, Judge, and Honorable McCormick V. Wilson, Judge, Circuit Court, Cole County, Respondents.

Nos. 69544–69546.

Supreme Court of Missouri, En Banc.

Nov. 25, 1987.

Donald Catlett, Public Defender, Jefferson City, for relators.

William L. Webster, Atty. Gen., John W. Simon, Michael L. Boicourt, Asst. Attys. Gen., Jefferson City, for respondents.

DONNELLY, Judge.

This is prohibition.

On April 16, 1987, Relator Carl Turner appeared for arraignment intending to enter a plea of guilty to the charge of escape. He was taken to a conference room at the Missouri State Penitentiary that was designated as a courtroom of the Circuit Court of Cole County. This conference room was "hooked-up" to the Cole County Courthouse by use of electronic equipment involving video cameras, microphones, and monitors. Relator could see and hear the judge and activity in the courtroom. The judge and prosecutor could see and hear relator and defense counsel and activity occurring in the conference room. Employees of the Department of Corrections were present along with relator and defense counsel in the conference room. Relator's request to plead *in person* before the court at the Cole County Courthouse was denied. Objecting to the electronic procedure, relator stood mute at his arraignment and the court entered a plea of not guilty on his behalf and set his case for trial.

On April 16, 1987, Relators Mark Arnold, et al., were arraigned on the charges of (respectively) offering violence to a corrections officer and possession of a weapon; assault and possession of a weapon; escape; offering violence to a corrections officer; possession of a weapon; possession of a weapon, offering violence to a corrections officer, and assault in the first degree. The arraignment procedure was similar to that followed in the Turner case with the same result.

On April 23, 1987, Relators Willie Jackson, et al., were given a preliminary examination on charges of (respectively) possession of a weapon; offering violence to a corrections officer; two counts of offering violence to a corrections officer; possession of a weapon; and assault. The preliminary examination was conducted via the video hookup between the Missouri State Penitentiary and the Cole County Courthouse as described in the Turner and Arnold cases.

Relators prayed that respondent-judges be prohibited from proceeding further. A preliminary order in prohibition was issued August 21, 1987. The cases were heard October 5, 1987.

Section 546.030, RSMo 1986, provides that no person "can * * * be allowed to enter a plea of guilty * * * unless he be personally present * * *."

Section 544.250, RSMo 1986, provides that no information shall be filed charging a person with a felony without first according such person "the right of a preliminary examination before some associate circuit judge in the county where the offense is alleged to have been committed in accordance with this chapter."

Section 544.270, RSMo 1986, provides that "[t]he associate circuit judge before whom any such person shall be brought shall proceed, as soon as may be, to examine the complainant and witnesses produced in support of the prosecution, on oath, in the presence of the prisoner, in regard to the offense charged, and other matters connected with such charge which such associate circuit judge may deem pertinent."

The question is whether, under such statutes, taking of pleas of guilty and conducting preliminary examinations via a video hookup between the courtroom in the

Courthouse and a conference room in the Penitentiary is authorized.

In *State ex rel. Peach v. Bloom,* 576 S.W.2d 744, 746 (Mo. banc 1979), this Court reaffirmed that "[t]he primary principle and the primary rule of construction is to ascertain the intention of the General Assembly from the words used in the statute in order to effectuate the true intent of the legislature."

Relators argue that an accused is entitled to be physically and personally present in the courtroom in the Courthouse. Respondents argue that the audio-visual technology permits relators' images and voices to be in the courtroom in the Courthouse for the purposes required by the statutes.

We must recognize, of course, that substantially similar antecedents of §§ 546.030, 544.250 and 544.270 were enacted long before audio-visual technology existed or could have been contemplated. In this circumstance, we cannot ascertain the intention of the General Assembly from the words used in those particular statutes. However, "while prior or contemporary legislation is more often consulted in the interpretation of a particular statute, yet subsequent legislation sometimes may be." *State v. Thomas,* 351 Mo. 804, 810, 174 S.W.2d 337, 340 (1943). And in 1981 the General Assembly enacted section 544.275, RSMo 1986, which reads as follows:

> 1. When a person committed to the department of corrections and human resources is a defendant at a preliminary hearing, or pretrial or posttrial motion or proceeding, or the movant in a postconviction proceeding, such proceeding may in the discretion of the judge be heard within a facility of the department of corrections and human resources.
>
> 2. Jury trials shall not be heard within a facility of the department of corrections and human resources.

It is fundamental in Missouri that "[t]he legislative department * * * represents it polity and its will * * *." *Hans v. Louisiana,* 134 U.S. 1, 21, 10 S.Ct. 504, 509, 33

L.Ed. 842 (1890). We consider section 544.275 a legislative statement that preliminary hearings and pretrial proceedings may be conducted in a conference room in the Penitentiary as well as in the courtroom at the Courthouse. We decline to presume to legislate public policy beyond that legislative statement.

The preliminary order in prohibition is made absolute.[1]

BILLINGS, C.J., and RENDLEN and HIGGINS, JJ., concur.

BLACKMAR, J., concurs as to 69544 and 69546 and dissents as to 69545 in separate opinion filed.

ROBERTSON, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

BLACKMAR, Judge, concurring in part and dissenting in part.

I am most sympathetic to the efforts of the Circuit Court of Cole County to deal with the problem of prisoners who must appear in court, either to respond to additional criminal charges or to maintain litigation on their own behalf. As the principal opinion points out, the legislature had no intention one way or the other about the use of audiovisual equipment because use of that equipment was not contemplated when the governing statutes were adopted. Nor do I find much help in Section 544.275, RSMo 1986, authorizing the holding of certain proceedings in the penitentiary. I am inclined to accept the State's argument that the use of the electronic equipment in the manner shown by the record satisfies requirements of "presence" and "open court" as used in the governing statutes and rules, and am reluctant to decide the case by resort to these terms because of the possible effect on other kinds of proceedings in which the closed circuit is used.

---

1. If the General Assembly should see fit to authorize procedures embracing audio-visual technology, we will then address the constitutional issues. *See,* Mo. Const. art. I, § 18(a); *Kansas City v. McCoy,* 525 S.W.2d 336 (Mo. banc 1975).

I nevertheless agree that in the exercise of our superintending control under Mo. Const. Art. V, Sec. 4, we should make the writ absolute as to the relator in Case No. 69544 who wants to enter a guilty plea. Under prevailing standards the court is required to conduct an extensive inquiry as to the defendant's understanding of the proceedings and the voluntariness of the plea before accepting a guilty plea. We know from experience that many who enter guilty pleas quickly seek to have the pleas set aside, and litigate for years in state and federal courts. We place great reliance on the record made before the trial court. I do not believe that the substantial requirements can be met in a satisfactory way unless there is a personal exchange between the pleading defendant and the judge who receives the plea.

I also concur in the issuance of an absolute writ with regard to preliminary hearings for the several relators in Case No. 69546. The preliminary hearing has assumed a new importance in that testimony given at the preliminary hearing, at which the defendant is represented by counsel, may be used during the trial on the merits if a witness is unavailable. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). I do not believe that use of this testimony should be permitted unless the defendant has the right to be present in the same room with the judge, his counsel, and the witness. Cross-examining counsel is entitled to be in the physical presence of the witness, and to have his client at his side for assistance and consultation. The use of the closed circuit procedure for preliminary hearings is unwise as a matter of judicial administration, and I would not allow it.

I have no similar qualms regarding arraignment and entry of a plea of not guilty. There is no reason why the effective administration of justice requires the presence of the judge, the defendant and the defendant's counsel in the same room. Nor is there prejudice to the defendant. If questions are raised the defendant could be rearraigned in open court before trial. I would not interfere with the circuit court's procedure on arraignments through the issuance of an extraordinary writ, but would allow the case to proceed in due course following closed circuit arraignment. There may be situations in which the transport of prisoners to the courthouse is dangerous and burdensome. I would mandate it only when strictly necessary.

There is an advantage in the closed circuit procedure, as opposed to the use of a room in the penitentiary for arraignment. One of the purposes of open proceedings is so that the public may be informed about the progress of judicial proceedings. Our tradition rejects secret criminal proceedings. Few members of the general public will find their way to the penitentiary. The courthouse, by contrast, is the most public of places.

I also reserve judgment as to whether this Court could issue rules supplementing or modifying existing statutes with regard to the closed circuit procedure in cases such as these, or in other cases.

I concur in making the writ of prohibition absolute in *State ex rel. Turner v. Kinder*, No. 69544, and *State ex rel. Jackson v. Kinder*, No. 69546. I would quash the writ in Case No. 69545, *State ex rel. Arnold v. Kinder*.

ROBERTSON, Judge, concurring in part and dissenting in part.

I concur in the holding of the principal opinion that respondent's use of video equipment must be prohibited in cases in which a defendant pleads guilty. The language of Section 546.030, RSMo 1986, that a person may not be permitted to plead guilty unless "he be personally present" is not ambiguous. It is not subject to this Court's interpretative touch. *Metro Auto Auction v. Director of Revenue*, 707 S.W. 2d 397, 401 (Mo. banc 1986). I would make the preliminary writ absolute in *State ex rel. Turner v. Kinder*, No. 69544.

The statutory language relating to preliminary hearings requires that the associate circuit judge "before whom any such person shall be brought shall ... examine the complainant and the witnesses produced ... in the presence of the prisoner...."

Section 544.270, RSMo 1986. The statutory command here is ambiguous. Presence is defined as "1. Act, fact, or state of being present, or of being in a certain place and not elsewhere, or of being within sight or call, at hand, or in some place that is being thought of; a being in company, attendance or association." Webster's Third New International Dictionary, (1966). In my view, the attributes of being present are themselves present through the use of the audio/video equipment contemplated by respondent.

It would serve little purpose for me to indulge in a further explication of my position regarding hearings. Judge Welliver adequately expresses my position on the subject. I concur in that portion of his separate opinion which discusses preliminary hearings and would quash the preliminary writ issued in *State ex rel. Jackson v. Kinder,* No. 69546.

Likewise, I share Judge Blackmar's views regarding arraignments and pleas of not guilty. There being no clear statutory mandate requiring personal presence, I would quash the preliminary writ issued in *State ex rel. Arnold v. Kinder,* No. 69545.

I concur in part and dissent in part.

WELLIVER, Judge, dissenting.

I respectfully dissent and would quash the writs as to guilty pleas, *State ex rel. Turner v. Kinder,* No. 69544, as to preliminary hearings, *State ex rel. Jackson v. Kinder,* No. 69546, and as to arraignments and not guilty pleas, *State ex rel. Arnold v. Kinder,* No. 69545.

The simple issue presented to us is whether split-screen video is an acceptable means of communication between judges and defendants physically sitting in separate courtrooms—whether our constitution and implementing statutes contemplated more or better communication between defendants and judges and witnesses than closed circuit television can provide.

When I look at the hundreds of instances where this Court has excused deviation from long established trial procedures and from strict letter of the law construction of statutes in criminal cases with the words

"we find no prejudice to the defendant," I am at a total loss to either see or understand the great prejudices to defendants contemplated by the principal opinion. Today split screen video appears to be an acceptable means of conducting the commercial business of the world, of conducting affairs between nations, of conducting political debate, of conducting the process of education, of communicating all forms of artistic pursuit, and for communicating to us the news of the world. In each and every instance we successfully, I believe, use the video process to evaluate the look of the eyes, the facial expressions, the mannerisms and the body language of the communicating party.

At argument, when Relator's counsel was asked to tell how his clients were prejudiced, he could only retreat from arguing prejudice in fact to arguing technical prejudice or a presumption of prejudice resulting from technical interpretation of the words of the statutes.

The principal opinion suggests that by enacting § 544.275, RSMo 1986, the legislature gave the judiciary only a single alternative to conducting pre-trial criminal proceedings in the courthouse courtroom, that of designating a room in the department of corrections as an alternative courtroom. I cannot read the statute so narrowly. Authorizing the trial judge to exercise his discretion as to which of the two rooms he will utilize is really no different than his exercising his discretion to utilize both courtrooms with acceptable visual and voice communication between the two. I view the statute as injecting flexibility into our former rigid procedure.

In 1983 the legislature enacted § 492.303.3, RSMo 1986 which states how a deposition may be taken and its use.

3. The deposition may be taken if the witness is an essential witness. The deposition may be videotaped. At the trial or upon any hearing any deposition obtained in accordance with this section, so far as it is otherwise admissible under the rules of evidence, may be used by either party for any reason stated in

Missouri supreme court rules of criminal procedure. In addition, the deposition may be used by the state if the witness refuses to testify or fails to attend the trial or hearing if this refusal or failure to attend the trial or hearing is not produced by the action of the state. § 492.303.3, RSMo 1986. It seems only logical that if videotaped depositions may be introduced at trial when a witness is unavailable to testify, then all video taped pre-trial proceedings should also be permitted.

There is no disagreement about the benefits flowing from permitting video taped pre-trial proceedings to be conducted simultaneously in the Cole County courtroom and a conference room in the department of corrections designated as a courtroom. Both the time and cost of transporting prisoners from the department of corrections to the courtroom and back is substantially reduced. Safety and security are substantially improved, and, probably most important, the judicial process is shortened without prejudice to the defendant.

The judge's presence in the same room with the defendant is not necessary. The defendant both sees and hears the judge. The judge sees and hears the defendant's responses. The judge can assess the voluntariness of the defendant's plea as well on the screen as if the defendant were in the same room. The judge can ask the defendant questions to determine that he understands what he is doing. He can judge the defendant's demeanor and mannerisms as though defendant were standing before the bench in the courtroom. There is in fact no prejudice to the defendant.

Sections 544.250 and 544.270, RSMo 1986, deal with the procedure required for a preliminary hearing. Section 544.250 provides that the accused shall have the right of a preliminary examination "before some associate circuit judge in the county where the offense is alleged to have been committed." Section 544.270 states that "[the] associate circuit judge before whom any such person shall be brought shall proceed, as soon as may be, to examine the complainant and witnesses produced in support of the prosecution, on oath, in the presence of the prisoner, in regard to the offense charged, and other matters connected with such charge which such associate circuit judge may deem pertinent."

The sole purpose of the preliminary hearing is to determine whether a felony has been committed, whether probable cause exists to believe the accused is guilty, and whether he shall be bound over or committed to jail for trial. *State v. Brinkley*, 354 Mo. 337, 189 S.W.2d 314, 319 (1945).

> A preliminary examination is in no sense a trial and does not finally adjudicate the guilt or innocence of an accused. It is simply a means to prevent abuse of power by the prosecution, while at the same time to permit arrest and detention of an accused by means of a limited inquiry into whether there is probable cause that a felony was committed and that the accused was the offender.

*State v. Clark*, 546 S.W.2d 455, 462 (Mo. App.1977).

The preliminary hearing has the following characteristics: a proceeding before a judicial tribunal; witnesses under oath; a judicial record of the hearing; a defendant represented by counsel; opportunity by counsel to cross-examination; and actual cross-examination of the witnesses. *State v. Lindsay*, 709 S.W.2d 499, 505 (Mo.App. 1986). *Ohio v. Roberts*, 448 U.S. 56, 69, 100 S.Ct. 2531, 2540, 65 L.Ed.2d 597 (1980).

Previous preliminary hearing testimony, cross-examined, like previous trial testimony, cross-examined, is generally free from confrontation problems. *Lindsay* at 504.

The closed circuit preliminary hearing contains all the characteristics in *Lindsay*. It was conducted before a duly constituted judicial tribunal, the witnesses were under oath, the defendants were represented by counsel, counsel cross-examined the witnesses, and the proceedings were recorded in a judicial record. Portions of preliminary hearings could be used during the trial on the merits if a witness were to become unavailable.

The predecessor of § 544.250, RSMo 1986 was enacted in 1905 and the predeces-

sor of § 544.270, RSMo 1986 was enacted in 1818. These statutes are virtually in the same form as they were when enacted. They were enacted long before we had the communication capability that is available today. In my view, the Constitution of Missouri is a living constitution, a constitution capable of adapting to the technology of the 1980's. It is the kind of constitution described by Chief Justice Hughes in *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 443–444, 54 S.Ct. 231, 242, 78 L.Ed. 413 (1934) when he stated:

> It is no answer to say that this public need was not apprehended a century ago, or to insist that what the provision of the Constitution meant to the vision of that day it must mean to the vision of our time. If by the statement that what the Constitution meant at the time of its adoption it means to-day, it is intended to say that the great clauses of the Constitution must be confined to the interpretation which the framers, with the conditions and outlook of their time, would have placed upon them, the statement carries its own refutation. It was to guard against such a narrow conception that Chief Justice Marshall uttered the memorable warning: 'We must never forget, that it is a *constitution* we are expounding' (*McCulloch v. Maryland,* 4 Wheat. 316, 407, 4 L.Ed. 579); 'a constitution intended to endure for ages to come, and consequently, to be adapted to the various *crises* of human affairs.' Id. at page 415 of 4 Wheat. When we are dealing with the words of the Constitution, said this Court in *Missouri v. Holland,* 252 U.S. 416, 433, 40 S.Ct. 382, 383, 64 L.Ed. 641, 11 A.L.R. 984, 'we must realize that they have called into life a being the development of which could not have been foreseen completely by the most gifted of its begetters * * * The case before us must be considered in light of our whole experience and not merely in that of what was said a hundred years ago.'

*Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 443–444, 54 S.Ct. 231, 242, 78 L.Ed. 413 (1934).

So interpreted, the intent of the drafters of our constitution and the intent of the drafters of the several implementing statutes relating to pre-trial procedures can be carried out by the judge in his discretion utilizing both the courthouse courtroom and the approved courtroom in the department of corrections connected by closed circuit television utilizing split screen projection in each courtroom and a video taped permanent record of the proceedings.

I know of no good reason for invalidating these or the prior video taped pre-trial proceedings. The responsibility for guaranteeing to defendant a fair trial is ours. With carefully drafted court rules approving such pre-trial procedures and with a minimum of judicial oversight in the future, we can guarantee to all defendants continued due process in all pre-trial proceedings while assuring the public of safety, security, and economic and timely handling of these judicial criminal pre-trial procedures.

All of the writs should be quashed and approval given to the Cole County Circuit Court to continue these procedures pending our development, drafting and publication of more comprehensive rules relating to such procedures.