SUPREME COURT OF MISSOURI
 en banc
STATE OF MISSOURI, ) Opinion issued January 11, 2022
 )
 Respondent, )
 )
v. ) No. SC99086
 )
RODNEY A. SMITH, )
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
 The Honorable Clinton R. Wright, Judge

 A jury found Rodney A. Smith guilty of two counts of statutory rape in the second

degree. Smith appeals, arguing the circuit court erred in permitting witness testimony via

two-way live video because it violated his right to confrontation under the United States

Constitution and the Missouri Constitution. The circuit court's judgment is reversed, and

the case is remanded.

 Factual and Procedural History

 The State charged Smith in connection with allegations of sexual assault by I.S.,

who was 16 years old at the time and the daughter of Smith's then girlfriend. During the

course of the investigation, I.S. underwent an examination at a hospital, where an

emergency-room physician took swabs from I.S.'s body for a sexual assault kit. Upon
arriving at the hospital, Detective Julie Johnson, the investigating officer, identified Smith

as a suspect and put out a "wanted" for him. I.S. later recanted her allegations, so Detective

Johnson cancelled the "wanted" but did not close the case due to pending lab results. When

Detective Johnson received those results, she collected a buccal swab from I.S. and

identified sources of DNA from an unknown male in the sexual assault kit. Erik Hall, the

Biology Technical Leader for the St. Louis Metropolitan Crime Laboratory, collected a

buccal swab from Smith, and completed a DNA analysis and laboratory report. Hall's work

showed the unknown male DNA from I.S.'s sexual assault kit matched the DNA from

Smith. Anne Kwiatkowski, the DNA Section Supervisor in the St. Louis Metropolitan

Crime Laboratory, reviewed, analyzed, and approved the report. Thereafter, Detective

Johnson attempted to contact Smith, but when that was unsuccessful, she sought criminal

charges against him.

 At trial, the State presented in-person testimony from I.S., I.S.'s mother, the

emergency-room physician, Detective Johnson, and Kwiatkowski. I.S., I.S.'s mother, and

Detective Johnson testified that I.S. recanted her allegations against Smith prior receiving

results from the lab tests. Detective Johnson further testified law enforcement was not

actively pursuing Smith until lab results showed Smith's DNA matched the DNA from

I.S.'s sexual assault kit. The emergency-room physician’s testimony supported elements

of the charged crimes. Kwiatkowski testified about testing I.S.'s samples and the DNA on

such samples matching unknown male DNA. The State introduced the DNA laboratory

 2
report, subject to limitations, 1 prepared by Hall into evidence through Kwiatkowski. The

State did not initially call Hall to testify because Hall was on paternity leave pursuant to

the Family Medical Leave Act ("FMLA"). 2 The State sought to present evidence of Smith's

buccal swabs through Kwiatkowski, but Smith objected. As a result, the parties discussed

possible remedies to allow presentation of this evidence, including bringing in a different

witness, seeking a continuance, or calling Hall to testify via two-way live video feed.

Ultimately, the circuit court allowed Hall's virtual testimony, over Smith's objection. Hall

testified he took the buccal swabs from Smith and performed a DNA analysis, which

revealed Smith's DNA matched the DNA samples taken from I.S.'s sexual assault kit.

 The jury found Smith guilty of two counts of statutory rape and not guilty of one

count of statutory rape and three counts of statutory sodomy. The circuit court sentenced

him to two concurrent terms of seven years in prison, suspended execution of sentence,

and placed Smith on probation for five years. Smith filed a motion for new trial, which

was overruled. Smith appealed. The court of appeals issued an opinion but transferred the

case to this Court pursuant to Rule 83.02. This Court has jurisdiction pursuant to article

V, § 10 of the Missouri Constitution.

1
 These limitations were initially discussed off the record, but the circuit court described them
afterward as follows: The report "could be used by the State, but not offered for the jury to view.
Portions could be used by the State. . . . Based upon [later testimony], portions of it upon request
could be published to the jury, but we have not discussed the entire report. So there is [sic] still
limitations on it."
2
 In discussion regarding Hall being on FMLA leave, the circuit court noted its understanding that
"per [FMLA] rules, he's barred from testifying." It is unclear whether the FMLA actually
prevented Hall from testifying, or if the prosecutor believed Hall was unavailable to testify in
person under his employer's FMLA leave policy.

 3
 Standard of Review

 Typically, this Court reviews evidentiary rulings for an abuse of discretion. State v.

March, 216 S.W.3d 663, 664 (Mo. banc 2007). Whether a criminal defendant's rights were

violated under the Confrontation Clause however, is a question of law this Court reviews

de novo. State v. Justus, 205 S.W.3d 872, 878 (Mo. banc 2006).

 "Properly preserved confrontation clause violations are presumed prejudicial."

Id. at 881. Violations of the Confrontation Clause are subject to the harmless error test:

"the error [must] be harmless beyond a reasonable doubt, meaning that there is no

reasonable doubt that the error's admission failed to contribute to the jury's verdict."

March, 216 S.W.3d at 667.

 Analysis

 Smith argues Hall's two-way live video feed testimony at trial violated his right to

confrontation and due process under the United States Constitution, U.S. Const. amends.

VI and XIV, and the Missouri Constitution, Mo. Const. art. I, §§ 10, 18(a). Smith properly

preserved this issue for appeal by objecting to Hall's virtual testimony and including the

issue in his motion for new trial.

 The Sixth Amendment's Confrontation Clause states "[i]n all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S.

Const. amend. VI. Article I, § 18(a) of the Missouri Constitution states "in criminal

prosecutions the accused shall have the right . . . to meet the witnesses against him face to

face." "The confrontation rights protected by the Missouri Constitution are the same as

 4
those protected by the Sixth Amendment of the United States Constitution." Justus, 205

S.W.3d at 878.

 Neither the United States Supreme Court nor this Court has addressed the use of

two-way live video feed in a criminal proceeding and its impact on a defendant's right to

confrontation. Three United States Supreme Court cases, however, examine a defendant's

right to confront adverse witnesses against him or her when that witness testimony falls

short of in-person, face-to-face confrontation: Coy v. Iowa, 487 U.S. 1012 (1988),

Maryland v. Craig, 497 U.S. 836 (1990), and Crawford v. Washington, 541 U.S. 36 (2004).

 In Coy, the Supreme Court found a defendant's confrontation rights were violated

when, pursuant to an Iowa statute, a large screen was placed between the defendant and

minor witnesses testifying about alleged sexual abuse. 487 U.S. at 1014. After a discussion

about the historical significance of the right to confrontation, the Supreme Court stated:

"We have never doubted . . . that the Confrontation Clause guarantees the defendant a

face-to-face meeting with witnesses appearing before the trier of fact." Id. at 1016. This

guarantee, the Supreme Court said, "relate[s] both to appearances and to reality," id. at

1017, and "[t]he perception that confrontation is essential to fairness has persisted over the

centuries because there is much truth to it," id. at 1019. The Supreme Court noted, although

"[t]he Confrontation Clause does not, of course, compel the witness to fix his eyes upon

the defendant," the Clause "ensure[s] the integrity of the fact-finding process" by allowing

the trier of fact to observe the witness and "draw its own conclusions." Id. at 1019-20

(alteration omitted). Ultimately, the Supreme Court said the "rights conferred by the

Confrontation Clause are not absolute, and may give way to other important interests."

 5
Id. at 1020. The Supreme Court found the Iowa statute authorizing the testimony behind a

screen violated the defendant's confrontation rights because there were "no individualized

findings that these particular witnesses needed special protection." Id. at 1021. The

Supreme Court added "something more than the type of generalized finding underlying

such a statute is needed." Id. The Supreme Court declined to address "whether any

exceptions exist" to the right of confrontation. Id.

 The Supreme Court revisited the issue in Craig and rejected a Confrontation Clause

challenge to a Maryland statute allowing a child abuse victim to testify via one-way,

closed-circuit television, in certain circumstances. 497 U.S. at 860. The Maryland statute

"permits a judge to receive, by one-way closed circuit television, the testimony of a child

witness who is alleged to be a victim of child abuse." Id. at 840. "To invoke the procedure,

the trial judge must first 'determin[e] that testimony by the child victim in the courtroom

will result in the child suffering serious emotional distress such that the child cannot

reasonably communicate.'" Id. at 840-41 (alteration in original) (citing Md. Cts. & Jud.

Proc. Code. Ann. § 9-102(a)(1)(ii)).

 Once the procedure is invoked, the child witness, prosecutor, and defense
 counsel withdraw to a separate room; the judge, jury, and defendant remain
 in the courtroom. The child witness is then examined and cross-examined in
 the separate room, while a video monitor records and displays the witness'
 testimony to those in the courtroom. During this time the witness cannot see
 the defendant. The defendant remains in electronic communication with
 defense counsel, and objections may be made and ruled on as if the witness
 were testifying in the courtroom.

Id. at 841-42. The trial court allowed the testimony, the Maryland Court of Special Appeals

affirmed, and the Court of Appeals of Maryland reversed and remanded for a new trial but

 6
rejected the Confrontation Clause violation argument. Id. at 843. The Supreme Court of

the United States vacated and remanded. Id. at 860. The Supreme Court held "a

defendant's right to confront accusatory witnesses may be satisfied absent a physical,

face-to-face confrontation at trial only where denial of such confrontation is necessary to

further an important public policy and only where the reliability of the testimony is

otherwise assured." Id. at 850. The Supreme Court stated "the Confrontation Clause

reflects a preference for face-to-face confrontation," id. at 849 (emphasis omitted) (citing

Ohio v. Roberts, 448 U.S. 56, 63 (1980)), but criminal defendants do not have "the absolute

right to a face-to-face meeting with witnesses against them at trial," id. at 844 (emphasis

omitted). The Supreme Court acknowledged "use of the one-way closed circuit television

procedure, where necessary to further an important state interest, does not impinge upon

the truth-seeking or symbolic purposes of the Confrontation Clause." Id. at 852. However,

"[t]he requisite finding of necessity must of course be a case-specific one." Id. at 855. The

Supreme Court set out three findings necessary to establish whether the case furthers an

important public policy:

 The trial court must hear evidence and determine whether use of the one-way
 closed circuit television procedure is necessary to protect the welfare of the
 particular child witness who seeks to testify. The trial court must also find
 that the child witness would be traumatized, not by the courtroom generally,
 but by the presence of the defendant. . . . Finally, the trial court must find
 that the emotional distress suffered by the child witness in the presence of
 the defendant is more than de minimis, i.e., more than "mere nervousness or
 excitement or some reluctance to testify[.]"

 7
Id. at 855-56 (internal citations omitted). However, just because "the face-to-face

confrontation requirement is not absolute does not, of course, mean that it may easily be

dispensed with." Id. at 850. 3

 In 2004, the Supreme Court established a new framework for analyzing a

defendant's rights under the Sixth Amendment. Crawford, 541 U.S. at 36. The Supreme

Court held "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands

what the common law required: unavailability and a prior opportunity for

cross-examination." Id. at 68. The Supreme Court overruled Ohio v. Roberts and its

"indicia of reliability" test. Id. at 68-69. After an examination of the history of the Sixth

Amendment, the Supreme Court stated "the principal evil at which the Confrontation

Clause was directed was the civil-law mode of criminal procedure, and particularly its use

of ex parte examinations as evidence against the accused," id. at 50, and "the Framers

would not have allowed admission of testimonial statements of a witness who did not

appear at trial unless he was unavailable to testify, and the defendant had had a prior

opportunity for cross-examination," id. at 53-54. The Supreme Court expressed

disapproval of the unpredictable and subjective nature of balancing tests. Id. at 63-64. The

Supreme Court also stated the Roberts balancing test was "so improbable that it reveals a

fundamental failure on our part to interpret the Constitution in a way that secures its

intended constraint on judicial discretion." Id. at 67. "By replacing categorical

3
 The Craig Court recognized the one-way procedure it approved does not ordinarily satisfy
confrontation requirements. Craig, 497 U.S. at 853 ("[A] State's interest in the physical and
psychological well-being of child abuse victims" may be sufficient to "outweigh . . . a defendant's
right to face his or her accusers in court" in only some cases.).

 8
constitutional guarantees with open-ended balancing tests, we do violence to [the Framers']

design." Id. at 67-68.

 The Supreme Court has identified two purposes of the Confrontation Clause: the

truth-seeking purpose and the symbolic purpose. Craig, 497 U.S. at 852. The truth-seeking

purpose includes notions of promoting reliability, impressing upon witnesses the

seriousness of their testimony, allowing the trier of fact to observe the demeanor of

witnesses, and subjecting the witnesses to cross-examination. See Coy, 487 U.S. at 1019

("A witness may feel quite differently when he has to repeat his story looking at the man

whom he will harm greatly by distorting or mistaking the facts . . . even if [a] lie is told, it

will often be told less convincingly." (internal quotation omitted)); Craig, 497 U.S. at 846

(The Confrontation Clause "ensur[es] that evidence admitted against an accused is reliable

and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal

proceedings. . . . [F]ace-to-face confrontation enhances the accuracy of factfinding by

reducing the risk that a witness will wrongfully implicate an innocent person."); California

v. Green, 399 U.S. 149, 158 (1970) ("Confrontation: (1) insures that the witness will give

his statements under oath—thus impressing him with the seriousness of the matter and

guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to

submit to cross-examination, the greatest legal engine ever invented for the discovery of

truth; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of

the witness in making his statement, thus aiding the jury in assessing his credibility."

(internal quotation omitted)); Lee v. Illinois, 476 U.S. 530, 540 (1986) ("The right to

 9
confront and to cross-examine witnesses is primarily a functional right that promotes

reliability in criminal trials.").

 The symbolic purpose consists of promoting "an open and even contest in a public

trial." Lee, 476 U.S. at 540 ("[T]he Constitution provides certain safeguards to promote to

the greatest possible degree society's interest in having the accused and accuser engage in

an open and even contest in a public trial."); Coy, 487 U.S. at 1017 ("[T]here is something

deep in human nature that regards face-to-face confrontation between accused and accuser

as essential to a fair trial in a criminal prosecution." (internal quotation omitted)). 4

 Although this case presents an issue of first impression for this Court, other

jurisdictions addressing whether witness testimony via two-way live video satisfies the

Confrontation Clause generally follow one of three approaches: (1) Craig, (2) the Second

Circuit's test in Gigante, or (3) Crawford. See infra United States v. Gigante, 166 F.3d 75

(2d Cir. 1999).

4
 The only case from this Court contemplating two-way video testimony is Kansas City v. McCoy,
525 S.W.2d 336 (Mo. banc 1975). In McCoy, this Court found a defendant's confrontation rights
were not violated when an expert witness testified via two-way video on a case for violation of a
municipal ordinance. Id. at 339. This Court recognized the virtual testimony preserved the
opportunity for cross-examination and observation of demeanor. Id. In doing so, this Court
acknowledged a municipal ordinance violation is a proceeding that is civil in nature and so limited
its holding: "We have the view that to require the physical presence of an expert witness against
one accused of violating a municipal police regulation would be to require more than the
confrontation clause rights of an accused demand in many instances of prosecutions for felonies."
Id. McCoy provides no precedential value nor guidance for the present case because this is a
criminal prosecution, and McCoy was decided prior to Crawford.

 10
 A.

 Most federal and state courts that have addressed this issue utilize Craig's test.

These courts hold a defendant's rights under the Confrontation Clause are violated by the

use of two-way video procedure unless such procedure is necessary to further an important

public policy and the reliability of the testimony is otherwise assured. See generally State

v. Mercier, 479 P.3d 967, 976 (Mont. 2021); Haggard v. State, 612 S.W.3d 318, 325-26

(Tex. Crim. App. 2020); United States v. Carter, 907 F.3d 1199, 1208 (9th Cir. 2018);

State v. Thomas, 376 P.3d 184, 193-94 (N.M. 2016); United States v. Abu Ali, 528 F.3d

210, 240-41 (4th Cir. 2008); Bush v. State, 193 P.3d 203, 214-15 (Wyo. 2008); United

States v. Yates, 438 F.3d 1307, 1314 (11th Cir. 2006); United States v. Bordeaux, 400 F.3d

548, 554 (8th Cir. 2005).

 Craig's holding has widely been interpreted to allow child sex abuse victims to

testify via two-way video, as well as one-way video. See, e.g., Bordeaux, 400 F.3d at 554.

Some courts have extended Craig to apply to adult witnesses, as well as child witnesses,

in all cases of two-way video. See, e.g., Carter, 907 F.3d at 1206 ("We now make clear

that a defendant's right to physically confront an adverse witness (whether child or adult)

cannot be compromised by permitting the witness to testify by video (whether one-way or

two-way) unless Craig's standard is satisfied.").

 The reliability portion of Craig's test is met by a "combined effect of these elements

of confrontation—physical presence, oath, cross-examination, and observation of

demeanor by the trier of fact." Craig, 497 U.S. at 846. Because the Craig Court stated the

combination of oath, cross-examination, and observation of a witness's demeanor

 11
"adequately ensures that the testimony is both reliable and subject to rigorous adversarial

testing in a manner functionally equivalent to that accorded live, in-person testimony," the

reliability portion of Craig's test is generally not discussed in detail by courts. Id. at 851.

 Craig's test requires courts to engage in a case-specific finding to analyze the

necessity prong. There is not much uniformity across jurisdictions as to what this prong

requires or what satisfies it. It is widely held that convenience, efficiency, and cost are

insufficient to support the necessity prong. See generally Thomas, 376 P.3d at 195; State

v. Rogerson, 855 N.W.2d 495, 507 (Iowa 2014); Commonwealth v. Atkinson, 987 A.2d

743, 750 (Pa. Super. Ct. 2009). But that is not always the case. See Harrell v. State, 709

So.2d 1364, 1370 (Fla. 1998) (finding the "important state interest in resolving criminal

matters in a manner which is both expeditious and just" satisfied the necessity prong of

Craig). Conversely, permanent illness, the existence of no viable alternatives to the

two-way video, and the witness being located outside the United States have been found

sufficient to support the necessity prong. 5 See generally Carter, 907 F.3d at 1208-09;

5
 Common "viable alternatives" to two-way video include issuing a continuance and obtaining a
pretrial deposition. Missouri Rule 25.14 permits a prosecuting attorney or defense attorney to file
a motion to take the deposition of a witness to preserve such testimony. A defendant has a right
to attend the deposition or "personally waive the right to be present and the right of confrontation
in writing or in open court." Rule 25.14. The deposition may be used by either party at trial, with
Rule 25.13 governing if offered by the defendant and Rule 25.16 governing if offered by the State.
As relevant here, Rule 25.16 allows the state to use the deposition if the defendant
 (1) Was personally present at the deposition and had the right of confrontation and
 cross-examination at the deposition, or (2) Personally waived that right to be
 present and the right of confrontation in writing or in open court, or (3) Failed to
 attend the deposition after the court ordered defendant to do so.
Rule 25.16(a)(1)-(3). The State must also show the witness is unavailable because the witness
 (1) Is dead, (2) Is unable to attend or testify because of sickness or infirmity, (3) Has
 invoked a testimonial privilege or other refusal to testify not produced by the action

 12
Rogerson, 855 N.W.2d at 506-07; Atkinson, 987 A.2d at 748; Bush, 193 P.3d at 215-16;

Horn v. Quarterman, 508 F.3d 306, 319-20 (5th Cir. 2007); Yates, 438 F.3d at 1316. Under

this prong, "important public policy" is a policy that would generally affect more than one

case. See, e.g., Yates, 438 F.3d at 1316 ("[T]he prosecutor's need for the video conference

testimony to make a case and to expeditiously resolve it are not the type of public policies

that are important enough to outweigh the Defendants' rights to confront their accusers

face-to-face.").

 B.

 As a departure from Craig, the Second Circuit established a more lenient standard.

In Gigante, the Second Circuit allowed a witness to testify via two-way live video because

of the witness's "fatal illness and participation in the Federal Witness Protection program"

as well as the defendant's refusal to attend a Rule 15 deposition due to ill health. 166 F.3d

at 81-82. The Second Circuit determined "it is not necessary to enforce the Craig standard"

because the two-way video, as opposed to one-way, "preserved the face-to-face

confrontation celebrated [in] Coy." Id. at 81. The Second Circuit made a "more profitable

comparison" to the standard for a Rule 15 deposition and held, "[u]pon a finding of

exceptional circumstances, . . . a trial court may allow a witness to testify via two-way

closed-circuit television when this furthers the interest of justice." Id. Ultimately, the

 of the state, or (4) Is otherwise unavailable and the state has made a good faith effort
 to obtain the presence of the witness at the hearing or trial, but has been unable to
 procure the attendance of the witness.
Rule 25.16(b)(1)-(4). A pre-trial deposition is also available under Federal Rule of Criminal
Procedure 15.

 13
Second Circuit concluded testimony via two-way live video "afforded greater protection

of [the defendant]'s confrontation rights than would have been provided by a Rule 15

deposition" because the jury could judge the witness's "credibility through his demeanor

and comportment." Id. In making this conclusion, however, the Second Circuit recognized

"[t]here may well be intangible elements of the ordeal of testifying in a courtroom that are

reduced or even eliminated by remote testimony." Id. Gigante has been adopted only in

one other circuit, and it was an unpublished opinion. See United States v. Benson, 79 F.

App'x 813, 821 (6th Cir. 2003).

 C.

 A third approach is to apply Crawford to cases involving two-way video procedures.

People v. Jemison, 952 N.W.2d 394, 396 (Mich. 2020). 6 It is beyond debate that for two

decades preceding Crawford, reliability was the touchstone of the Supreme Court's

Confrontation Clause doctrine. In Roberts, the Supreme Court held the Confrontation

Clause was not a barrier for admission of a hearsay declarant's statement if the testimony

bore adequate "indicia of reliability." 448 U.S. at 66. Crawford overruled Roberts and

transformed the Supreme Court's approach to the Confrontation Clause doctrine from a

case-by-case reliability-balancing test to a categorical rule: "Where testimonial statements

6
 A few courts have suggested Crawford and Craig co-exist. See, e.g., Bordeaux, 400 F.3d at
554-57 (applying Craig to a child's live testimony via two-way video at trial, and applying
Crawford to a child's out-of-court statements to a forensic interviewer); Yates, 438 F.3d at 1314
n.4 ("Crawford applies only to testimonial statements made prior to trial, and the live two-way
video testimony at issue in this case was presented at trial.").

 14
are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is

the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69.

 Craig, decided before Crawford, operated under the Roberts "indicia of reliability"

framework. In Craig, the Supreme Court identified four considerations courts should

weigh to determine reliability—physical presence, whether the testimony was taken under

oath, whether the accused had an opportunity to cross-examine, and whether the jury could

observe the witness's demeanor. 497 U.S. at 845-46. After weighing the four factors, the

Supreme Court determined the one-way video testimony was reliable and held admitting it

was justified "where necessary to protect a child witness from trauma that would be caused

by testifying in the physical presence of the defendant, at least where such trauma would

impair the child's ability to communicate." Id. at 857.

 Justice Scalia dissented in Craig. He rejected the majority's reliability balancing

test, arguing it eliminated the right to confrontation because "the Confrontation Clause does

not guarantee reliable evidence; it guarantees specific trial procedures that were thought to

assure reliable evidence, undeniably among which was 'face-to-face' confrontation." Id. at

862 (Scalia, J., dissenting). "Whatever else [the Confrontation Clause] may mean in

addition, the defendant's constitutional right 'to be confronted with the witnesses against

him' means, always and everywhere, at least what it explicitly says: the 'right to meet face

to face all those who appear and give evidence at trial.'" Id. (quoting Coy, 487 U.S. at

1016). Justice Scalia criticized the balancing test articulated by the Craig majority, stating

it runs afoul to the text of the Constitution. Id. at 870. "We are not free to conduct a cost-

benefit analysis of clear and explicit constitutional guarantees, and then to adjust their

 15
meaning to comport with our findings." Id. "For good or bad, the Sixth Amendment

requires confrontation, and we are not at liberty to ignore it." Id.

 Fourteen years later, Justice Scalia wrote for the majority in Crawford, and his

dissent from Craig became the Supreme Court's view of the Confrontation Clause doctrine.

The Supreme Court overruled Roberts because it is improper to "replac[e] categorical

constitutional guarantees with open-ending balancing tests." 541 U.S. at 67-68. The

Supreme Court held a defendant's confrontation right is absolute for testimonial evidence

unless the witness is unavailable and the defendant had "a prior opportunity for

cross-examination." Id. at 68. The Supreme Court discussed historical examples to

illustrate why face-to-face testimony is critical. Id. at 43-50; see also Jemison, 952 N.W.2d

at 399. For example, in Sir Walter Raleigh's 1603 trial for treason, Raleigh argued his

accuser lied in order to save himself and demanded the accuser testify: "Call my accuser

before my face." 541 U.S. at 44. The trial court refused Raleigh's request, the jury found

him guilty, and he was sentenced to death. Id. As a result, "English law developed a right

of confrontation that limited these abuses" against criminal defendants. Id. The Supreme

Court doubted that a reliability balancing test would have "provid[ed] any meaningful

protection" in these cases. Id. at 68. Therefore, the Supreme Court restored face-to-face

testimony as a fundamental element of a defendant's confrontation right. Id. at 57 (quoting

Mattox v. United States, 156 U.S. 237 (1895)); see also Mo. Const. art. I, § 18(a) ("[I]n

criminal prosecutions the accused shall have the right . . . to meet the witnesses against him

face to face.").

 16
 The Roberts' reliability balancing test was the basis for Craig's rule to allow

important public policy considerations to override face-to-face confrontation only when it

is necessary and the testimony is reliable enough. 497 U.S. at 850. When Crawford

overruled Roberts, it put Craig's reliability focused rule into serious doubt. 7 Whether Craig

continues to have any precedential value was well articulated by Judge Sutton in his

concurring opinion in United States v. Cox:

 Consider how they treated another decision of the Court: Ohio v.
 Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Craig relied
 heavily, indeed almost entirely, on Roberts to justify its decision. 497 U.S.
 at 846-50, 110 S.Ct. 3157. But Crawford overruled Roberts with respect to
 testimonial statements. 541 U.S. at 60-69, 124 S.Ct. 1354.
 Or consider how the two opinions characterized the Confrontation
 Clause guarantee. Craig treated the Clause as a safeguard for evidentiary
 reliability as measured by the judge in that case and today's rules of
 evidence. See 497 U.S. at 849, 110 S.Ct. 3157. But Crawford held that it
 was a procedural guarantee that "commands, not that evidence be reliable,
 but that reliability be assessed in a particular manner: by testing in the
 crucible of cross-examination" in front of the accused. 541 U.S. at 61, 124
 S.Ct. 1354.
 Or consider how the opinions treated a defendant's right to
 face-to-face confrontation with the witnesses against him. Craig said that
 the "face-to-face confrontation requirement is not absolute." 497 U.S. at 850,
 110 S.Ct. 3157. But Crawford said that a face-to-face meeting between an
 accuser and the accused was an essential part of the confrontation right.
 541 U.S. at 43–45, 124 S.Ct. 1354. "Dispensing with confrontation because
 testimony is obviously reliable," Crawford observed, "is akin to dispensing
 with jury trial because a defendant is obviously guilty." Id. at 62, 124 S.Ct.
 1354.
 Or consider the methodology of each opinion. Craig looked to the
 "growing body of academic literature documenting the psychological trauma
 suffered by child abuse victims who must testify in court" to identify new

7
 Many courts have noted Crawford's potential effect on Craig's holding. See Jemison, 952
N.W.2d at 396. ("Crawford did not specifically overrule Craig, but it took out its legs."); Carter,
907 F.3d at 1206 n.3 ("The vitality of Craig itself is questionable in light of the Supreme Court's
later decision in Crawford."); Thomas, 376 P.3d at 193 ("Crawford may call into question the prior
holding in Craig to the extent that Craig relied on the reliability of the video testimony.").

 17
 exceptions to the right to face-to-face confrontation. 497 U.S. at 855, 110
 S.Ct. 3157. But Crawford looked to the original publicly understood
 meaning of confrontation to determine when the exception-free words of the
 guarantee ("[i]n all criminal prosecutions") should have exceptions. 541 U.S.
 at 42–50, 124 S.Ct. 1354.
 Or consider how each opinion describes the relationship of the Clause
 to the rules of evidence. Craig worried that adherence to the words of the
 guarantee was "too extreme" and would "abrogate virtually every hearsay
 exception" developed by the rules of evidence up to that point. 497 U.S. at
 848, 110 S.Ct. 3157 (quoting Roberts, 448 U.S. at 63, 100 S.Ct. 2531).
 But Crawford refused to rely on "the law of evidence" at the time of the trial
 because it "would render the Confrontation Clause powerless to prevent even
 the most flagrant inquisitorial practices." 541 U.S. at 51, 124 S.Ct. 1354.
 Or consider each opinion's view of exceptions to the
 guarantee. Craig offered no hint that there was any limit to the kinds of
 exceptions that the Roberts balancing test would allow then or in the future.
 But Crawford carefully identified the kinds of exceptions that might be
 allowed under its approach and conspicuously never mentions Craig as one
 of them. See id. at 53-55, 124 S.Ct. 1354.

871 F.3d 479, 492-93 (6th Cir. 2017) (Sutton, J., concurring).

 Nevertheless, Crawford did not overrule Craig, and it is the Supreme Court's

"prerogative alone to overrule one of its precedents." State Oil Co. v. Khan, 522 U.S. 3,

20 (1997). Therefore, Missouri courts should certainly continue to apply Craig to the facts

it decided: a child victim may testify against the accused by means of video (or similar

Craig process) when the circuit court determines, consistent with statutory authorization

and through case-specific showing of necessity, that a child victim needs special protection.

 Whether the combination of oath, cross-examination, and observation of demeanor,

when utilized in a two-way video setting in which the witness is in a remote location with

minimal or no safeguards, is ever enough to ensure the reliability of any witness does not

have to be decided today because the circuit court made no express finding that Hall was

 18
unavailable. More importantly, this Court is not confident the issue would be decided the

same way today. In denying certiorari in 2010, Justice Sotomayor stated:

 This case presents the question whether petitioner's rights under the
 Confrontation Clause of the Sixth Amendment, as applied to the States
 through the Fourteenth Amendment, were violated when the State introduced
 testimony at his trial via a two-way video that enabled the testifying witness
 to see and respond to those in the courtroom, and vice versa. The question
 is an important one, and it is not obviously answered by Maryland v. Craig.
 We recognized in that case that a defendant's right to confront accusatory
 witnesses may be satisfied absent a physical, face-to-face confrontation at
 trial, but only where denial of such confrontation is necessary to further an
 important public policy. In so holding, we emphasized that the requisite
 finding of necessity must of course be a case-specific one. Because the use
 of video testimony in this case arose in a strikingly different context than in
 Craig, it is not clear that the latter is controlling.

Wrotten v. New York, 130 S. Ct. 2520, 2520 (2010) (Sotomayor, J., denying certiorari)

(internal quotations, citations, and alterations omitted). To decide two-way video

procedures categorically satisfy the safeguards of the Confrontation Clause would be to

easily dispense with the "face-to-face confrontation requirement," something the Supreme

Court required in Crawford, 541 U.S. at 68, and even expressly cautioned against in Craig,

497 U.S. at 850.

 Conclusion

 Hall, the witness in the case at bar, was neither a victim nor a child. The circuit

court made no finding that Hall was unavailable. The circuit court's error of admitting

Hall's two-way live video testimony was not harmless beyond a reasonable doubt. The

testimony from multiple witnesses established I.S. recanted her allegations. Absent Hall's

testimony, the circuit court ruled the State could not lay a proper foundation to admit the

evidence that Smith's DNA matched the DNA from I.S.'s sexual assault kit. This evidence

 19
was the only physical evidence proving sexual contact between Smith and I.S. Therefore,

the error of admitting Hall's two-way live video testimony was not harmless beyond a

reasonable doubt. The circuit court's judgment is reversed, and the case is remanded. 8

 ___________________________
 Zel M. Fischer, Judge

All concur.

8
 Because this Court remands, it is not necessary to address Smith's remaining claims requesting
plain error review.

 20